## In re GROSS PRODUCTION TAX OF EXCHANGE OIL CO.
## EXCHANGE OIL CO. v. STATE.

No. 11355—Opinion Filed Dec. 14, 1920.

(Syllabus by the Court.)

1. **Taxation—Gross Production Tax—Revision of Taxpayer's Return—Right to Contest.**

While the gross production act of 1916 does not expressly give the taxpayer the right to appear and contest the action of the State Auditor in revising and increasing the return of the value of his gross production made by the taxpayer, the same purpose is accomplished by the part of the act which provides: "The State Board of Equalization upon its own initiative, may, and upon complaint of any person who claims that he is taxed too great a rate hereunder, shall, take testimony to determine whether the taxes herein imposed are greater or less than the general ad valorem tax for all purposes would be on the property of such producer subject to taxation in the district or districts where the same is situated, including the value of oil, gas, or mineral lease, or of the mining or mineral rights, the machinery, equipment or appliances used in the actual operation of in and around any such well or mine, the value of the oil, gas, asphalt or any of the said mineral ores produced and any other element of taxable value in lieu of which the tax herein is levied."

2. **Same—Hearing Before State Board—Evidence.**

In view of the construction we place upon the gross production law of 1916, it is clear that the Board of Equalization erred in sustaining the demurrer to the evidence offered by the taxpayer.

Appeal from State Board of Equalization.

From the action of the State Board of Equalization in dismissing the protest of the Exchange Oil Company in the matter of the company's gross production tax, the company appeals. Reversed and remanded.

Edw. H. Chandler, Summers Hardy, Wm. O. Beall, Thos. J. Hanlon, J. S. Ross, and H. C. Thurmon, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for defendant in error.

KANE, J. This is an appeal from the action of the State Board of Equalization in the matter of certain complaints made by the plaintiff in error herein against the action of the State Auditor in increasing its gross production tax.

There are numerous assignments of error presented for review based upon the assumption that the State Board of Equalization was without jurisdiction to hear, revise, and determine as on appeal the action of the State Auditor in increasing the gross production return made by the appellant, but, as we view the case, it is only our duty to review such questions, if any, as the Board of Equalization has jurisdiction to pass upon in this particular proceeding.

In order to determine what questions, if any, are presented for review by the record before us, it is necessary to examine briefly the laws under which the taxes complained of were levied and this proceeding was commenced. The original gross production law was contained in the act of May 26, 1908, which is found revised in the Laws of 1910, as section 7464 and related sections. In this act the rate of taxation was fixed at one-half of one per cent. of the gross receipts from the total production of petroleum or other mineral oil or natural gas, and was in addition to the taxes levied against the operator on an ad valorem basis. In 1915 this law was amended by fixing the rate of taxation at two per cent. of the gross value of the production of petroleum or mineral oil or natural gas, which tax was declared to be in lieu of any other method of taxing said property that might be levied and collected upon an ad valorem basis, upon the equipment and machinery in and around any well producing natural gas or petroleum, or other mineral oil, and used in the actual operation of such producing well, from which a gross production tax was to be collected under that act.

The Legislature of 1916 again amended the gross production tax laws in several particulars, and it is this latter act that we are called upon to consider.

The gross production tax law of 1916, chapter 39, Sess. Laws 1916, p. 102, provides generally that every person, firm, or corporation engaged in the production of petroleum or other crude oil or other mineral oil or natural gas shall in 30 days after the expiration of the quarter-annual period ending on the last day of March, 1916, and of each quarter-annual period thereafter expiring respectively on the last day of June, September, December, and March of each year file with the State Auditor a statement under oath showing the location of each oil or gas well operated by it the last preceding quarter-annual period; the kind of such mineral oil or gas produced; the gross amount thereof produced, and the actual cash value thereof at the place of production; the amount of the royalty payable thereon, if any; when payable and whether it is claimed that such royalty is exempt from taxation by law and the facts on which such claim of exemption is based, and with such information pertaining thereto as the auditor may require, and shall at the same time pay to the State Auditor a tax equal to three per centum of the gross value of the production, less the royalty interest. Another part of the act provides that the State Auditor shall have power to ascertain and determine whether or not any return made by the taxpayer is a true and correct return of the gross production and of the value thereof of such corporation and to ascertain the correct amount and compute the tax accordingly. Another part of the act provides that the taxes thus imposed shall be in full and in lieu of all taxes by the state, county, city, towns, townships, school districts, and other municipalities, except that oil in storage on hand at the date property is assessed for general and ad valorem taxation for any subsequent tax year shall be assessed and taxed as other property within the taxing district in which such property is situated at the time.

In the case at bar the taxpayer made his return as provided by law, whereupon the State Auditor, being dissatisfied therewith, exercised the power conferred upon him to ascertain the correctness of the return made by the taxpayer, and finding that the return was untrue, proceeded to find what he considered the correct amount of the gross production involved and the value thereof, which sum exceeded by a large amount the return made by the taxpayer and the taxes due thereunder. Thereupon the State Auditor demanded of the appellant payment of the additional sums found to be due, and thereafter the appellant paid the State Auditor said sums and at the time of making said payment filed a written protest under oath setting forth his grounds of objection to the payment of said sum as provided by another section of the taxing law. Thereafter the several protests of the appellant were set for hearing before the State Board of Equalization, at which time the appellant

appeared by its attorneys and the state appeared by Mr. Fulton, Assistant Attorney General, whereupon the several protests were consolidated and heard together and considered as one protest. Thereupon statements of the case were made by the respective counsel, after which evidence was offered in support of the grounds of complaint set forth in the several written protests. At the conclusion of all the evidence a demurrer filed by the Attorney General on behalf of the state was sustained and the protests of the appellant dismissed.

The part of the act of 1916 under which this proceeding was commenced, provides as follows:

"The State Board of Equalization, upon its own initiative, may, and upon complaint of any person who claims that he is taxed too great a rate hereunder, shall, take testimony to determine whether the taxes herein imposed are greater or less than the general ad valorem tax for all purposes would be on the property of such producer subject to taxation in the district or districts where the same is situated, including the value of oil, gas, or mineral lease, or of the mining or mineral rights, the machinery, equipment or appliances used in the actual operation of, in and around any such well or mine, the value of the oil, gas, asphalt or any of said mineral ores produced and any other element of taxable value in lieu of which the tax herein is levied. The said board shall have power and it shall be its duty to raise or lower the rates herein imposed to conform thereto. An appeal may be had from the decision of the State Board of Equalization thereon, by any person aggrieved, to the Supreme Court, in like manner and with like effect as provided by law in other appeals from said board to said court; provided, that after such tax has been collected and distributed, or paid without protest, no complaint with reference to rate thereof shall be heard or considered."

The principal ground of complaint on the part of the appellant is that the gross production law hereinbefore outlined, or at least that part of it which gives the State Auditor power to revise and correct the return made by the taxpayer, is void because it violates that principle of constitutional law which gives the taxpayer the right to appear and be heard at some stage of the proceeding before the tax becomes irrevocably fixed. The precise point made is that the act of 1916 is void because it does not provide means by appeal or otherwise, whereby the taxpayer may question the action of the State Auditor in increasing the value of his gross production and thereby increasing the amount of his taxes. There is some contention on the part of the Attorney General that certain parts of the act of 1915 provide for an appeal from this action of the State Auditor,

but inasmuch as the appellant has not attempted to appeal, but has proceeded in accordance with the act of 1916, it will only be necessary for us to determine what his rights are under that act.

It is clearly apparent from an analysis of the entire act of 1916 that the Legislature intended that the sole test of whether a person or corporation subject to the payment of taxes under the gross production law was taxed too high or too low was whether the tax imposed was greater or less than the general ad valorem tax would be on the property of such producer of the class named in the part of the act above quoted. To start with, the supreme legislature apparently assumed that a rate of three per cent. based upon the value of the gross production would accomplish this purpose. But the law also contemplates that if the rate stated, to wit, 3 per cent. did not accomplish this purpose, the State Board of Equalization, either upon its own initiative or upon complaint of any person who claims that he is taxed too great a rate, is empowered to take testimony to determine whether the taxes imposed are greater or less than they would be upon an ad valorem basis. If the taxes are found to be greater or less than they would be on an ad valorem basis, then the board must adjust the matter, not by raising or lowering the valuation placed upon the gross production by either the taxpayer or State Auditor, as seems to be assumed by counsel, but by raising or lowering the rate of taxation. It is quite true, as counsel contends, that there is no provision in this act which confers any direct authority upon the State Board of Equalization to revise the findings made by the State Auditor with reference to the amount or value of oil produced, but as the only ground of complaint open to the taxpayer is that the fixed rate of taxation based upon the valuation made by the auditor results in imposing on him a greater tax than he would be required to pay if taxed upon an ad valorem basis, may be fully heard and adjusted on complaint by the State Board of Equalization, it seems to us that the statute affords the taxpayer ample opportunity to appear and be heard, and is therefore not objectionable on the ground urged against it.

It is further contended by counsel for the appellant that under the act the auditor is not authorized to retain the part of the tax paid under protest, but is required upon collection to distribute the same, and that therefore the money being once paid into the State Treasury can only be paid out by appropriation, from which it is argued that as a mat-

ter of fact the company coming under the provision of the gross production tax has no opportunity whatever for appeal. This position is untenable. The statute requires the auditor to retain the taxes paid under protest as a special deposit until the matters in dispute are settled, the plain object and purpose of the act being to require the prompt payment of taxes. It is settled law, the authorities all holding that the Legislature may properly provide for the payment of a tax as a condition precedent to testing its correctness and validity. Cooley on Taxation, vol. No. 2, p. 1423; Ety v. Thoushly, 73 Mich. 123; Snyder v. Marks, 109 U. S. 189; Street Railway Tax Cases, 92 U. S. 613; Shelton v. Platt, 139 U. S. 591.

Our whole system of taxation, whether the taxes are levied on a gross production or an ad valorem basis, contemplates that there shall be no interruption in the collection of taxes on account of disputes arising between the taxing officers and the taxpayer. The governing statutes require all taxes to be promptly paid as assessed, but are liberal in giving the taxpayer ample opportunity to appear and test the justice or validity of the tax before some tribunal organized for that specific purpose, as in the case at bar, or before the courts in an action commenced for the purpose of recovering taxes paid under protest. That this does not violate either the due process clause of the Constitution of the state or the Constitution of the United States has been many times held in opinions by this court, one of which at least has been affirmed by the Supreme Court of the United States.

In view of the construction we place upon this act it is clear that the Board of Equalization erred in sustaining the demurrer to the evidence offered by the taxpayer. The statute says the board shall take testimony to determine whether the taxes imposed are greater or less than the general ad valorem tax would be on the property of such producer subject to taxation. The board did not take testimony, nor did it determine whether the taxes imposed are greater or less than if levied on an ad valorem basis. This duty seems to be mandatory upon the board whenever a complaint is filed by the taxpayer.

The board seems to have misapprehended its duty in the premises by refusing to hear the testimony offered, and by failing to carry out the mandate of the statute. It was clearly the duty of the board to hear, not only the evidence offered, but to take testimony on its own initiative, if necessary, for the purpose of ascertaining the amount of taxes that the appellant would have been liable to pay on an ad valorem basis. And if it found that the taxes imposed were greater or less than the general ad valorem tax, it became its duty to raise or lower the rate in order to make the taxes imposed conform to an ad valorem basis.

There is some contention on the part of counsel for the appellant that if the gross production tax law be held to be valid, the State Board of Equalization has jurisdiction to determine whether there has been a systematic and intentional discrimination against the plaintiff in error in the matter of fixng the value of property tax ad valorem and to grant relief because thereof.

It is scarcely conceivable that this question will ever arise if the board faithfully carries out its duty under the part of the act hereinbefore referred to. The State Board of Equalization is charged with the duty of equalizing and adjusting the taxes between individuals and the various counties and taxing districts of the state, and in the performance of this duty it has ample opportunity to obviate any intentional discrimination against a particular taxpayer by the local taxing officers.

It will be observed that the duty of the board is not so much to ascertain the precise value of the taxpayer's property as it is to determine whether the taxes imposed are greater or less than they would be if levied on an ad valorem basis. The board knows or has means of ascertaining the valuation placed upon property taxed on an ad valorem basis by the taxing authorities of the district wherein the property herein involved is situated, and as it is not likely that this particular property would be valued any higher than other property of the same class taxed upon an ad valorem basis, it seems to us that this valuation, as finally equalized by the state board, would furnish a fair test for determining the question involved, to wit, whether the taxes imposed on a gross production basis are greater or less than the general ad valorem tax would be on the property of such producer.

For the reasons stated, the judgment of the court below is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

HARRISON, V. C. J., and PITCHFORD, JOHNSON, HIGGINS, and BAILEY, JJ., concur. RAINEY, C. J., and McNEILL, J., concur in all of the opinion except the suggestion to the board contained in the latter part thereof as to what would furnish a fair test for determining the question involved, from which they dissent.