**CONTINENTAL OIL COMPANY, a corporation, Petitioner,**

v.

**The OKLAHOMA TAX COMMISSION, Respondent,**

**LVO Corporation, a corporation, and Occidental Petroleum Corporation, a corporation, Intervenors.**

**No. 45330.**

Supreme Court of Oklahoma.

Feb. 29, 1972.

Rehearing Denied April 19, 1972.

Smith, Leaming & Swan, Hal D. Leaming, Oklahoma City, John Wimbish, Ponca City, for petitioner.

Brown, Verity, Brown & Baker, Geo. L. Verity, Lin Patterson, Oklahoma City, T. E. Waibel, Tulsa, for intervenors.

Albert D. Lynn, E. J. Armstrong, Lester D. Hoyt, Oklahoma City, Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for respondent.

JACKSON, Justice:

Continental Oil Company, Petitioner, and LVO Corporation and Occidental Petro-

leum Corporation, Intervenors (their intervention being approved) are paying gross production taxes on the production of petroleum as required by the provisions of 68 O.S.Supp.1970, § 1001(a), as amended in 1971, 68 O.S.1971, § 1001(a). Continental and Intervenors are paying their taxes to the Oklahoma Tax Commission after filing protests as is authorized by the provisions of 68 O.S.1971, § 1001(h). Continental and Intervenors have filed complaints with the State Board of Equalization asking that Board to take testimony to determine whether the 7% gross production tax is greater than the general ad valorem tax would be on the property of these companies subject to taxation in the taxing districts where their properties are located, pursuant to 68 O.S.1971, § 1001(h).

Continental and Intervenors filed pleadings in the Oklahoma Tax Commission notifying the Commission of the hearing in the State Board of Equalization and requested the Tax Commission to segregate all gross production taxes paid and being paid by them under protest. The Commission refused to segregate these funds, or any part thereof, on the ground that Continental and Intervenors have an adequate remedy under 68 O.S.1971, § 227, to recover any overpayment of the gross production tax. Intervenors filed suit in the District Court of Oklahoma County pursuant to 68 O.S.1971, § 226, to recover the difference between the 7% gross production tax paid and what may later be determined by the State Board of Equalization to be due on an ad valorem tax equivalent. So far as we know this suit is still pending. Continental and Intervenors applied to the District Court for a writ of mandamus to compel the Oklahoma Tax Commission to segregate the funds. The writ was denied.

Continental and Intervenors have invoked the original jurisdiction of this court and request that we issue a writ or writs of mandamus to the Oklahoma Tax Commission to compel a segregation of the taxes that they have paid and are paying under protest, or in any event a portion

thereof. We have assumed jurisdiction, notwithstanding the actions in the District Court, in order to be of assistance in further proceedings before the State Board of Equalization and the Oklahoma Tax Commission. The questions are of public importance. The motion of the Attorney General to dismiss this action is denied.

Although Continental has paid its gross production taxes under protest it is fearful that if the total tax (7%) is distributed without segregating any portion thereof that it will have no statutory authority to compel a hearing by the State Board of Equalization, or that if a hearing is granted and its taxes are reduced it would be unable to recover the overpayment. This fear is based upon the last proviso of 68 O.S.1971, § 1001(h), which provides:

"(P)rovided, that after such tax has been collected and distributed, or paid without protest, no complaint with reference to rate thereof shall be heard or considered."

It is immediately apparent that unless the taxpayer protests the payment of the tax he has forfeited his right to a hearing before the State Board of Equalization. It is also apparent that when the taxpayer has filed his complaint with the State Board of Equalization and has protested the payment of the tax he has done all that is required of him in order to obtain a hearing. § 1001(h), supra.

Did the Legislature intend that if a gross production taxpayer pays the tax under protest and the taxes are distributed, through no fault of his own, that the taxpayer's right to be heard by the State Board of Equalization is forfeited? We do not believe so. Did the Legislature intend that if the taxpayer is successful before the State Board of Equalization and his taxes are reduced that there would be no way that he might obtain a refund? We do not think so.

The gross production tax code, 69 O.S. 1971, § 1001, et seq., makes no specific provision for segregating gross production

taxes under protest. At the time § 1001(h) was enacted in 1916 the tax, if paid under protest, would have been segregated. In Exchange Oil Co. v. State (1920), 80 Okl. 52, 193 P. 999, the tax protestant contended that the State Auditor was not authorized to retain the tax paid under protest but was required to distribute the same, and that once paid into the State Treasurer it could only be paid out by an appropriation. Further, that under the statute (now § 1001(h) if the money was collected and distributed it would have no right of appeal to the State Board of Equalization. We held that contention untenable because the statute required the auditor to retain the taxes paid under protest as a special deposit until the matters in dispute were settled.

We did not identify the statute in that decision but apparently the court was referring to Ch. 107, Art. Two, S.L.1915, at page 150. That provision segregating taxes paid under protest was repealed in S.L. 1941, p. 464.

The ultimate question we are called upon to answer is whether, under the statutes, the Oklahoma Tax Commission is required to segregate the gross production tax that is paid under protest where protestant petitions for a hearing as authorized by § 1001(h), supra.

68 O.S.1971, § 225, provides for an appeal from the Tax Commission. Subsection (c) of § 225, provides that if the appeal is from an order of the Commission assessing or increasing a tax the taxpayer shall pay the tax and the Commission shall hold the tax in a segregated fund pending the result of the appeal to this court. In the instant case the Commission has not assessed or increased the gross production tax and § 225 would not be applicable.

68 O.S.1971, § 226 affords the taxpayer a remedy in addition to the remedy provided in § 225. § 226 purports to provide a remedy to any taxpayer aggrieved by any State tax law. § 226(b) requires the taxpayer to pay the tax and give notice that he will file suit for recovery of the tax.

The Commission under 226 is required to segregate and hold the tax for 30 days, and if suit is filed to hold it separate until the action is terminated. The proviso in § 1001(h), supra, is that after the gross production tax has been collected and distributed the complaint of the taxpayer will not be heard or considered. In this connection, however, it must be noticed that neither § 1001(h) nor § 226 makes any provision for segregating only a portion of the 7% gross production tax paid under protest. It is admitted that Continental and Intervenors are required to pay taxes, but it is believed by them that their taxes will be substantially less if they are assessed on an ad valorem basis. Who is to determine what amount of the 7% should be segregated? In Atlantic Refining Company v. Oklahoma Tax Commission (1959), Okl., 360 P.2d 826 we held that "The State Board of Equalization has exclusive jurisdiction to determine whether tax imposed on production of minerals under Gross Production Act is greater or less than the general ad valorem tax for all purposes would be * * *." If our holding in that case is applicable here, and we think it is, it follows that neither the Tax Commission, the District Court, nor this court, has jurisdiction to determine what portion of the gross production tax should be segregated by the Commission pending a hearing by the State Board of Equalization.

If the Legislature intended by enacting § 1001(h) and § 226 that all of the gross production taxes which are paid under protest must be segregated then, according to the brief of the Attorney General, if all gross production taxpayers should file protests the Tax Commission would be required to segregate approximately $70,000,000.00 per year pending hearings before the State Board of Equalization and appeals to this court.

Intervenors have filed suit in the District Court to recover the taxes paid under protest. At this juncture they are not able to inform that court what amount of the tax they should recover, and the District

Court is not authorized to conduct a hearing and make that determination. Only the State Board of Equalization is authorized to make that determination. Thus, if Intervenors are to obtain relief in the District Court they must wait until the State Board of Equalization determines the amount of the refund, if any, they are entitled to receive. If the Board's decision is appealed to this court further delays are involved. If the Legislature intended the results which flow from a literal interpretation of § 1001(h) and § 226 when construed together, then the governmental functions which are financed by the gross production tax could well be placed in financial shock. In addition it seems inconceivable that the Legislature would confer jurisdiction upon the District Court, as is here contended, and at the same time place the adjudicating power in the State Board of Equalization and require the District Court to await its action and later perform no more than a clerical duty.

68 O.S.1971, § 227, provides that any taxpayer, except as therein provided, who has paid to the State of Oklahoma through error of fact, or computation, or mistake of law, any tax to the Oklahoma Tax Commission, as therein provided, may be refunded the amount of the tax erroneously paid.

68 O.S.1971, § 228, provides that if the Tax Commission finds that the tax was erroneously paid through mistake of fact it shall enter its written order allowing the refund out of funds in the official depository clearing account of the Tax Commission derived from collections in said fund from the same source from which the overpayment occurred. That section further provides that "an appropriation of so much of said fund as is necessary to pay said claims for refund erroneously paid or collected is hereby made." It further provides where refunds are due to taxpayers who are required to remit taxes to the Tax Commission on a monthly basis (as is required of a gross production taxpayer, (68 O.S.1971, § 1009) the Commission may, in lieu of a refund of the tax, credit the account of the taxpayer for such amount. If the State Board of Equalization finds that the taxpayer has paid more gross production taxes than he would pay on an ad valorem tax basis and the Tax Commission fails to discharge its duty in paying the refund, or giving credit to the account of the taxpayer, the taxpayer may appeal to this court (§ 228) in the manner provided in 68 O.S.1971, § 225.

The Legislature was undoubtedly of the view in levying a 7% gross production tax on oil and gas that the amount of taxes that would be paid by the average producer would be equal to the amount that the average producer would pay if the producer was taxed on an ad valorem basis. Evidencing uncertainty that this would be true in every case the Legislature authorized the State Board of Equalization to conduct hearings, § 1001(h), supra, and raise or lower the rates to conform with the facts. Thus, if Continental and Intervenors are paying, and the Oklahoma Tax Commission is collecting, an excessive tax we must construe it to result through error or mistake of fact within the contemplation of §§ 227 and 228, supra. The State's integrity requires that when a statutory tax refund is due, it must be paid, and procedures must be found to accomplish that purpose. Art. 2, § 6, Oklahoma Constitution.

We have held that where it is apparent that a strict interpretation of a particular statute, construed alone, would defeat the intention of the Legislature as shown by other legislative enactments which relate to the same subject, and which have been enacted in pursuance and according to a general purpose in accomplishing a particular result, such construction should not be adopted. In re Cleveland's Claim, 72 Okl. 279, 180 P. 852.

We are advised in oral argument by attorneys for the Tax Commission that they participated in drafting the Gross Production Tax Act in 1971 and copied § 1001(h) from earlier statutes containing the same provisions and inadvertently

failed to remove that portion of the proviso which denies a hearing after the tax has been collected and distributed. While we have no doubt this is true we must disregard such statements in the interpretation of statutes. However, where as here the Legislature has dealt with massive tax structures and procedures, we must construe the statutes so as not to reach an absurd result, Independent School District v. Independent School District, Okl., 363 P.2d 835, or destroy or substantially impair the functions of state government. Brown v. State Election Board, Okl., 369 P.2d 140.

Obviously the statutes under consideration need legislative clarification. If we are in error in our conclusions the Legislature will have an opportunity to provide corrective legislation and at the same time take appropriate action to minimize the harm that would result from substantial gross production tax refunds.

Having concluded that Continental and Intervenors have an adequate remedy to recover refunds under the provisions of 68 O.S.1971, §§ 227, 228 and 225, the petition of Continental Oil Company and application of LVO Corporation and Occidental Petroleum Corporation, intervenors, for writs of mandamus to compel the Oklahoma Tax Commission to segregate the taxes they have paid and are paying under protest are denied.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, HODGES, McINERNEY and BARNES, JJ., concur.

LAVENDER, J., dissents.

LAVENDER, Justice (dissenting in part):

It is my view that the statute now appearing as 68 O.S.1971 § 1001(h) authorizes the State Board of Equalization (or this court on appeal therefrom) to make a binding determination as to the proper *rate* of gross production tax to be applied against the value of a taxpayer's production of "taxable" minerals during a particular fiscal year so as to "conform" to what the taxpayer's total ad valorem taxes on the property mentioned in that statute would be for the same fiscal year if subject to ad valorem taxation; but that it does not authorize that board (or this court on appeal therefrom) to make a binding determination as to the total amount of gross production taxes to be paid by, or refunded to, the taxpayer.

It is also my view that the statute now appearing as 68 O.S.1971 § 226 requires the Oklahoma Tax Commission to segregate, and hold, in its official depository clearing account, that portion, but only that portion, of the tax paid in compliance therewith as the taxpayer seeks to recover in his action under that statute.

It is my further view that, in the basic situation involved in this case [a complaint under Section 1001(h), and payment of each monthly installment of gross production tax, at the rate and on the value of the production, and at the times and in the manner, prescribed therefor in the Gross Production Tax Code], Section 226 is applicable and provides the taxpayer's only remedy for the amount of gross production tax, if any, which he would not have been required to pay under the rate as finally determined in his proceeding under Section 1001(h). And, since the "segregation" provision of Section 226 is an integral and essential part of the remedy provided thereunder, the court could, and should, if necessary, in an action thereunder, hold a hearing or hearings and determine the proportion of the gross production tax installments being paid by the plaintiff pending final determination of the plaintiff's proceeding under Section 1001(h) and his court action. Such a determination would be necessary and, I think, proper where, as the intervenors in the present instance, the plaintiff makes it clear in his petition that he seeks to recover that portion, but only that portion, of the gross production tax which he would not have been required to pay under the rate therefor as finally determined in his proceeding under Section 1001(h), unless the plaintiff and the Tax

Commission agreed on the proportion to be segregated and held.

Under my views of the matters involved, the petitioner herein, Continental Oil Company, would not be entitled to any relief, but each of the intervenors would be entitled to a writ of mandamus to compel the Oklahoma Tax Commission to segregate, and hold, in its official depository clearing account pending final determination of their intervening actions in the District Court of Oklahoma County, a stated proportion of the monthly installments of gross production tax paid by it with respect to the value of its production of oil and gas during the remainder of the current fiscal year. If the intervenors and the Tax Commission did not, within a reasonable time allowed by this court, agree upon the proportion to be segregated and held, I would refer the matter to the above-named district court for hearing and report to this court.