HARTER ENERGY v. OKLAHOMA TAX COMMISSION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:HARTER ENERGY v. OKLAHOMA TAX COMMISSION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 HARTER ENERGY v. OKLAHOMA TAX COMMISSION
2021 OK CIV APP 12
486 P.3d 732
Case Number: 118598
Decided: 03/05/2021
Mandate Issued: 04/07/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 12, 486 P.3d 732

 

HARTER ENERGY, INC., Petitioner,
v.
OKLAHOMA TAX COMMISSION, Respondent.

PROCEEDING TO REVIEW AN ORDER OF
THE OKLAHOMA TAX COMMISSION

AFFIRMED

Joseph R. Farris, FRANDEN, FARRIS, QUILLIN, GOODNIGHT, & ROBERTS, Tulsa, Oklahoma, and
Kevin B. Ratliff, RATLIFF LAW FIRM, Oklahoma City, Oklahoma, for Petitioner,

Morgan Lankford, OKLAHOMA TAX COMMISSION, Oklahoma City, Oklahoma, for Respondent.

THOMAS E. PRINCE, JUDGE:

¶1 The Petitioner, Harter Energy, Inc. ("Taxpayer"), sought a refund of gross production taxes paid on enhanced production from a secondary recovery project. The Oklahoma Tax Commission denied the refund because the claim fell outside the three-year statute of limitations set forth in 68 O.S. §227(b). The Commission also denied the Taxpayer's assertion that the agency should be estopped from denying the refund because an agency employee provided substantial assistance to the Taxpayer in preparing the application for refund and because the agency failed to set a hearing within the statutorily required time in violation of the Taxpayer's rights under the state and federal constitutions. We affirm the Commission's denial because the three-year limitations period is applicable to this case, estoppel is inappropriate under the circumstances, and the delay in setting the hearing did not amount to a constitutional violation.

BACKGROUND

¶2 The relevant facts are not in dispute. The Taxpayer owns a fifty-percent, non-operating working interest in the East Ripley Red Fork/Skinner Unit in Payne County, Oklahoma. The unit, which contains several producing oil wells, was organized under a plan unitization in 1997. In 2000, the operator, who was not the Taxpayer, sought to boost production of the unit through a saltwater injection well. Such efforts to increase production are generally known as "enhanced recovery projects," and a saltwater injection well is considered a "secondary recovery unit." The saltwater well was drilled, and the operator began injections on October 1, 2000.

¶3 Generally, Oklahoma levies a 7% tax on the production of oil and gas. 68 O.S. Supp. 2013 §1001(B).[1] Over the years, this tax has been subject to numerous exceptions and exemptions, including the one at issue here, which we will call the "incremental production exemption." This provision exempted any additional production attributable to the injection well from the gross production tax for a period of up to five years. Id. §1001(D)(3). Although the law has been amended numerous times, the parties are in agreement that the incremental production exemption would have applied to some part of the production from the applicable unit during the five-year exemption period if it was available at the time the Taxpayer sought the refund.

¶4 Taking advantage of the incremental production exemption is a two-step process. The Taxpayer must first obtain an order from the Oklahoma Corporation Commission stating that the project is a qualifying enhanced recovery project. Id. §1001(D)(9). The operator sought such an order from the OCC, but not until February 2005. The OCC granted the request just two months later. The OCC declared that the saltwater injection well was in fact a "secondary recovery unit" being used in an "enhanced recovery operation" with a "project beginning date" of October 1, 2000, and an "estimated payback" of three years.

¶5 Despite this approval, neither the operator, the tax remitter, nor Harter Energy, prior to this case, applied to the OTC to claim its exemption, either to seek a refund on taxes paid or on future taxes to which it might apply. It is undisputed that the full gross production taxes were paid, including those attributable to Harter Energy's interest, during the years the incremental production exemption was available.

¶6 In January 2014, Patrick Carter, the president of Harter Energy, began investigating the possibility of requesting a refund for the unclaimed incremental production exemption. Eventually, Mr. Carter was put in touch with John Cottengim, who was the Supervisor of the Gross Production Section of the Compliance Division of the Commission. Over the course of the next couple of months, Mr. Cottengim met with Mr. Carter and assisted him in preparing the necessary paperwork for the refund. Mr. Cottengim told Mr. Carter that the project start date was actually in September 2003, when the production dramatically increased due to the saltwater injection. Based on this start date, the maximum refund would have been ten years, not five years. 68 O.S. Supp. 2000 §1001(D)(2). Additionally, according to Mr. Carter, Mr. Cottengim informed him that the refund was still available and that the Commission had approved several similar refunds. After reviewing a draft of Mr. Carter's claim and making corrections to Mr. Carter's spreadsheets, Mr. Cottengim remarked that "everything should work out fine" and "everything else looks great." With this help, Mr. Carter prepared amended gross production returns, which were reported on a monthly basis, for the ten-year period between September 2003 through August 2013. In February 2014, Mr. Carter submitted these amended returns with his claim for a total refund of $435,277.96.[2]

¶7 The refund request, which was audited by another employee of the agency, was denied in September 2014. The Commission stated three reasons for the denial. First, all claims after September 2005 were denied because the Commission identified the correct project start date as October 1, 2000. Second, the entirety of the claim was denied because the Commission asserted that any claim for refund must be made by the operator per Commission regulations. And third, the Commission rejected the entirety of the claim because it was filed outside the three-year statute of limitations for refund requests based on "error of fact, or computation, or misinterpretation of law" as set forth in 68 O.S. §227(b).

¶8 On October 3, 2014, the Taxpayer timely filed a demand for a hearing before the Commission. Unbeknownst to the Taxpayer, there apparently was some gap in communication between Mr. Cottengim's office and the office of the Administrative Law Judges, which was responsible for setting the hearing. In the interim, Mr. Carter called Mr. Cottengim to inquire as to the status of the requested hearing. According to Mr. Cottengim, he informed Mr. Carter that it was the responsibility of the Administrative Law Judge to set the hearing. On September 16, 2016, a hearing was finally set for November 1, 2016 -- 760 days after the hearing was first requested.

¶9 After two continuances at the Taxpayer's request, a hearing was held before an Administrative Law Judge Jay L. Harrington on March 16, 2017. Mr. Cottengim and Mr. Carter, who represented the Taxpayer pro se, both testified and each party stipulated to the entry of the other's exhibits. After the matter was taken under advisement, it was reassigned, pursuant to OAC 710:1-5-31, to Judge Kasper's docket for decision "[d]ue to an unprecedented number of cases submitting on Judge Harrington's docket."

¶10 Three months later, Judge Kasper entered his Findings, Conclusions, and Recommendations, which recommended affirming the denial of the refund. The order contended that Mr. Carter had no legal basis for his refund because §227 governed the claim and that section includes a three-year statute of limitations. The ALJ also rejected Mr. Carter's claims based on equitable estoppel and due process. After some delay while the Commission awaited a potentially impactful decision in another matter then on appeal,[3] the Commission affirmed the ALJ's denial of the refund. The Taxpayer timely appealed.

STANDARD OF REVIEW

¶11 An order of the Oklahoma Tax Commission acting in its adjudicative capacity must be affirmed if the record contains substantial evidence supporting the factual bases of the order and the order is free of legal error. Neer v. State ex rel. Oklahoma Tax Commission, 1999 OK 41, ¶3, 982 P.2d 1071. Statutory construction presents a question of law that we review de novo. Humphries v. Lewis, 2003 OK 12, ¶3, 67 P.3d 333, 335.

ANALYSIS

¶12 On appeal, the Taxpayer makes three objections to the Commission's denial of the requested refund. First, the Taxpayer argues that the three-year statute of limitations set forth in 68 O.S. §227(b) does not apply under these facts. Second, even if that statute is applicable, the Taxpayer argues that the Commission should be equitably estopped from applying the statute in this case because its employee assisted the Taxpayer, assured the Taxpayer the refund was owed, and, apparently, had allowed similar refunds in the past. Finally, the Taxpayer argues that the Commission's actions violated the Taxpayer's procedural due process rights and rights to a speedy remedy under Oklahoma's constitution. Each argument will be addressed in turn.

Statute of Limitations

¶13 The Taxpayer first argues that the Commission erred as a matter of law in applying the three-year statute of limitations found in 68 O.S. §227(b) to bar their claim for refund. Section 227, in relevant part, provided as follows:

(a) Any taxpayer who has paid to the State of Oklahoma, through error of fact, or computation, or misinterpretation of law, any tax collected by the Tax Commission may, as hereinafter provided, be refunded the amount of such tax so erroneously paid, without interest.

(b) Any taxpayer who has so paid any such tax may, within three (3) years from the date of payment thereof file with the Tax Commission a verified claim for refund of such tax so erroneously paid. The Tax Commission may accept an amended sales tax, withholding tax or other report or return as a verified claim for refund if the amended report or return establishes a liability less than the original report or return previously filed.

68 O.S. Supp. 2014 §227.

¶14 The Taxpayer argues that, because the initial claim for refund was not based on an "error of fact, or computation, or misinterpretation of law" the three-year statute of limitations found in subsection (b) cannot apply. The argument, in short, is that the gross production tax in this case was not initially paid through any error, but voluntarily, because it was owed at the time. It was not until the project received the order from the Oklahoma Corporation Commission in 2005 that the Taxpayer became eligible for any exemption, as until that time all parties agree the tax was owed, properly calculated, and paid according to law.

¶15 Any claim for refund of a voluntarily paid tax must be supported by a specific statute. Budget Rent-A-Car of Tulsa v. State ex rel. Oklahoma Tax Commission, 1989 OK 67, 773 P.2d 736, ¶8, 739 ("Generally, taxes voluntarily paid on exempt property are not recoverable absent a specific statute conferring such right."). Nothing in 68 O.S. Supp. 2013 §1001(D) provides a process or mechanism to allow a taxpayer who becomes eligible for a refund of gross production taxes to lawfully and accurately secure the repayment of the voluntarily tax paid. Rather, the provisions of §1001(D) are limited to setting forth the requirements of eligibility for the exemption in the first instance. Although §1001(D) tells a taxpayer how to become exempt, it does not establish a procedure to accomplish that purpose. See Continental Oil Co. v. Oklahoma Tax Commission, 1972 OK 30, 494 P.2d 650, 653 ("The State's integrity requires that when a statutory refund is due, it must be paid, and procedures must be found to accomplish that purpose"). The Court in Budget Rent-A-Car of Tulsa v. State ex rel. Oklahoma Tax Commission, described the requirement for a "specific statute conferring" the right to claim an exemption after taxes had been paid to be "necessary for orderly and efficient administration of governmental affairs." Budget Rent-A-Car, supra, at ¶8, 739.

¶16 Therefore, because no other statutory procedure exists to adjudicate a refund of the payment of gross production taxes that become exempt under §1001(D), even within the three-year limit, the procedural mechanism of §227 must be utilized. Section 227 is part of the "Uniform Tax Procedure Code," the avowed purpose of which "is to provide, so far as is possible, uniform procedures and remedies with respect to all state taxes." 68 O.S. §201. The availability of alternative procedures outside the uniform code must be clearly stated by the legislature. Id. ("Unless otherwise expressly provided in any state tax law, heretofore or hereafter enacted, the provisions of this article shall control and shall be exclusive.") Id. Thus, in the absence of an alternative procedure, §227 provides the only statutorily authorized procedure by which a taxpayer could possibly claim such an exemption after payment. If it is §227(a) that permits the claim for refund in the first instance, then we cannot ignore the time limits of §227(b).

¶17 The Taxpayer insists §227 has no application in this case. However, if that were the case, taxpayers would have no mechanism to request a refund of gross production taxes paid for which an exemption is later obtained, even if the request for refund is within the three-year statute of limitations. The Commission does not urge this taxpayer-hostile reading of the statute and we decline to adopt it here. To do so would be contrary to the well-established rule that "tax statutes be strictly construed against the state" and that "[a]ny doubt as to their possible meaning must be resolved in favor of the taxpayer." Strelecki v. Oklahoma Tax Comm'n, 1993 OK 122, 872 P.2d 910, 920.[4] Rather, we adopt the interpretation implicit in the Commission's ruling here, that §227 allows a taxpayer that paid gross production taxes pursuant to 68 O.S. Supp. 2013 §1001(D) to claim a refund, provided that request is made within three years. Accordingly, we affirm the Commission's denial of the claim for refund because it was made well outside the applicable three-year statute of limitations.[5]

Estoppel

¶18 The Taxpayer next argues that the Commission should be estopped from denying the refund. The argument is essentially that estoppel is appropriate because Mr. Cottengim provided extensive assistance in preparing the application for the refund, told the Taxpayer that the refund was still available, and the Taxpayer relied on this misinformation to his detriment by expending significant effort in preparing its application.

¶19 While the Commission does not dispute any of these facts, equitable estoppel will not be applied against the government unless the application "would further some principle of public policy or interest." Burdick v. Independent School District, No. 52 of Oklahoma City, 1985 OK 49, 702 P.2d 48, 53. Here, the Taxpayer asserts an "overarching public policy determined by the Legislature ... to incentivize investment in secondary recovery projects by granting a gross production tax exemption for those who invest in and complete such projects." Brief-in-Chief, pg. 11. While we do not dispute that it appears that the legislature had this policy in mind in enacting the incremental production exemption, we do not believe applying equitable estoppel to allow the refund in this case would further that policy.

¶20 The tax exemption the Legislature intended was available at the time this project was started and still available when it finished. Had the Taxpayer, the operator, or the remitter of the tax sought the exemption in a timely fashion, the exemption would have been applied as intended by the Legislature. Applying equitable estoppel in this instance could not incentivize this secondary recovery project, as the project has long been completed. Market conditions and perhaps other unknown factors apparently supplied sufficient incentive to undertake the project at issue here. Applying equitable estoppel in this instance would not further any public policy, but rather signal to taxpayers who have already paid full gross production taxes on a recovery project that has long since been completed and paid for that there is a tax exemption still available to them without any limit whatsoever on when they can claim a refund. We do not view this as furthering any principle of public policy and therefore affirm the Commission's refusal to apply equitable estoppel here.[6]

Right to a Speedy Remedy & Due Process

¶21 Finally, the Taxpayer argues that the Commission's failure to set a hearing before the ALJ within sixty days violated its procedural due process rights and right to a speedy remedy as guaranteed by the Oklahoma Constitution. The Taxpayer's argument is rooted in §227(d) and (e). Subsection (d) provides that once a claim for refund is denied a taxpayer must demand a hearing within thirty days. Subsection (e) requires as follows:

Upon the taxpayer's timely filing of a demand for hearing, the Commission shall set a date for hearing upon the claim for refund which date shall not be later than sixty (60) days from the date the demand for hearing was mailed. The taxpayer shall be notified of the time and place of the hearing. The hearing may be held after the sixty-day period provided by this subsection upon agreement of the taxpayer.

68 O.S. §227(e) (emphasis added). It is undisputed that, although the Taxpayer requested a hearing within the required time, a hearing was not set until 760 days after the request.

¶22 There are generally four factors to consider in determining whether an agency's inaction violates a party's right to a speedy remedy under Article 2, Section 6 of Oklahoma's Constitution.[7] Pierce v. State ex rel. Department of Public Safety, 2014 OK 37, ¶8, 327 P.3d 530, 533. They are the length of the delay, the reason for the delay, the party's assertion of the right, and the prejudice to the party occasioned by the delay. Id. Here, the Commission found that the Taxpayer could not demonstrate a violation of its constitutional right to a speedy remedy because it did not adequately assert its right and it could not show any prejudice resulting from the delay. We agree with the Commission's analysis, but admonish the agency for the extreme length of the delay.

¶23 Although the delay was substantial in this case, and the Taxpayer did call Mr. Cottengim's office inquiring about the scheduling of the hearing, the Taxpayer could have done more to assert its rights. The evidence supports a finding that the Taxpayer called to inquire as to the refund several times during the period when the hearing should have been scheduled. The undisputed testimony of Mr. Cottengim was that he told Mr. Carter that it was the office of the ALJ that was responsible for scheduling the hearing. The implication of that testimony was that Mr. Carter could have inquired of the ALJ's office why the hearing had not been scheduled. The record does not support a finding, and the Taxpayer does not assert, that he ever called or made any inquiry of the ALJ's office seeking an explanation as to the delay in setting the hearing. Indeed, Mr. Carter did not first complain about the delay in writing until its position letter, which was filed just before the hearing, well after the delay had already been incurred. Moreover, the Taxpayer cannot point to any prejudice caused by the delay in this case.

¶24 We find that the facts of this case do not reveal any violation of the Taxpayer's procedural due process rights. Procedural due process requires adequate notice and an opportunity to be heard. Hill v. American Medical Response, 2018 OK 57, ¶45, 423 P.3d 1119, 1135. Although there was substantial delay in this case, the Taxpayer was made aware of the hearing and had its day in court. Accordingly, the Commission's decision that the substantial delay in setting a hearing in this case did not violate the Taxpayer's constitutional rights is affirmed.

¶25 For the reasons set forth above, the order of the Commission denying the Taxpayer's refund is AFFIRMED.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] Unless otherwise noted, we will cite to those laws in effect when the Taxpayer first sought a refund on February 3, 2014.

[2] Both parties and the ALJ in its order state that the refund request was for $514,656.15. It is unclear where this figure came from. In its claim for refund the Taxpayer states: "Harter Energy, Inc. is applying for a rebate of gross production taxes pursuant to O.S. 68-1001. We are hereby requesting a refund for the following wells ERRSU in the amount of $435,277.96." R. 58.

[3] On July 2018, the Commission stayed the proceedings to await a decision in Petroquest Energy, LLC v. Oklahoma Tax Commission, which was then pending in the Court of Civil Appeals (Case No. 115,969). After certiorari was denied in Petroquest, the Commission remanded this case to the ALJ for reconsideration in light of the Court of Civil Appeals' unpublished decision in Petroquest. As relevant to this case, Petroquest concerned whether the Commission's failure to schedule a hearing within sixty days of the taxpayer's demand, as required by 68 O.S. §227(e), forfeited the Commission's authority to deny the requested refund. The Court of Civil Appeals, Division II, affirmed the Commission's decision that the delay in setting the hearing did not render the Commission without jurisdiction to deny the refund.

[4] The Taxpayer urges that this rule supports their reading of §227 because §227(b) can only be applied to cases where a taxpayer has made a payment "so erroneously paid." 68 O.S. §227(b). However, as noted, we think a better reading of the statute as a whole is that where a refund is allowed pursuant to §227(a), the limitations of §227(b) must also apply. Although this limits a taxpayer's ability to claim a refund to three years, the Taxpayer's reading risks not allowing a taxpayer in the same position as the appellant here to ever make a claim for a refund, even during the three-year period after payment. We find the latter reading to be far more hostile to taxpayers than the former.

[5] Because the Taxpayer is unable to point to any statutory provision providing a procedural mechanism for obtaining a refund, the Taxpayer points to the administrative provisions implementing the exemption. See OAC 710:45-3-11. However, those provisions do not provide any statutory authorization for a refund. Rather, they provide specific requirements for documentation that the Commission will require if a refund or credit is due. They do not and cannot provide a statutory allowance of a credit in the first instance.

[6] The Taxpayer also relies on Oral Roberts Univ. v. Oklahoma Tax Commission, 1985 OK 97, 714 P.2d 1013, for the proposition that the Commission cannot change a longstanding policy position without a cogent reason. While we agree this is the general holding of that case, the Taxpayer does not point to any specific longstanding policy issue in this case similar to that in play in Oral Roberts. The question in that case concerned the Commission's treatment of religious institutions such as the university as a church for sales tax purposes. The Court found that the Commission's "undeviating position for at least 37 years," coupled with the legislature's failure to modify the statute in question during that same period, operated to "so firmly entrench[]" the Commission's interpretation that it could not be modified absent legislative action. Id. ¶19, 1017. The Taxpayer's reliance on Oral Roberts is, therefore, misplaced. See also, Oklahoma Tax Commission v. Emery, 1982 OK CIV APP 13, 645 P.2d 1048, ¶9, 1051 ("[E]stoppel do[es] not apply against the state acting in its sovereign capacity because of mistakes or errors of its employees.") (approved for publication by the Oklahoma Supreme Court).

[7] This provision provides that "[t]he courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const., Art. 2, § 6.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1982 OK CIV APP 13, 645 P.2d 1048, State ex rel. Oklahoma Tax Com'n v. Emery
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 67, 773 P.2d 736, 60 OBJ 1121, Budget Rent-A-Car of Tulsa v. State ex rel. Oklahoma Tax Com'n
Discussed
 1993 OK 122, 872 P.2d 910, 64 OBJ 2885, Strelecki v. Oklahoma Tax Com'n
Discussed
 1972 OK 30, 494 P.2d 650, CONTINENTAL OIL CO. v. OKLAHOMA TAX COM'N
Discussed
 2003 OK 12, 67 P.3d 333, HUMPHRIES v. LEWIS
Discussed
 2014 OK 37, 327 P.3d 530, PIERCE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2018 OK 57, 423 P.3d 1119, HILL v. AMERICAN MEDICAL RESPONSE
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
 1985 OK 49, 702 P.2d 48, Burdick v. Independent School Dist. No. 52 of Oklahoma County
Discussed
 1985 OK 97, 714 P.2d 1013, 56 OBJ 2777, Oral Roberts University v. Oklahoma Tax Com'n
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 1001, Gross Production Tax on Certain Interests - Exemptions
Discussed at Length
 68 O.S. 201, Purpose of Article
Cited
 68 O.S. 227, Refund of Erroneous Payments - Hearing
Discussed at Length


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA