2004 OK 94

## OKLAHOMA STATE BOARD OF EXAMINERS OF CERTIFIED SHORTHAND REPORTERS, Petitioner,

v.

### D.J. THOMPSON, Respondent.

No. 99,944.

Supreme Court of Oklahoma.

Dec. 14, 2004.

As Corrected Feb. 24, 2005.

David L. Kinney, Assistant Attorney General, Oklahoma City, Oklahoma, for Oklahoma State Board of Examiners of Certified Shorthand Reporters, for Petitioner.

D. J. Thompson, Pro Se, Tallahassee, Florida, for Respondent.

## OPINION

WATT, Chief Justice.

¶ 1 The State Board of Examiners of Certified Shorthand Reporters (Board) filed a complaint against the Respondent, D.J. Thompson, pursuant to Rule 2(d) and (e)[1] of the Rules Governing Disciplinary Proceedings of the State Board of Examiners of Certified Shorthand Reporters, (the Rules), 20 O.S.1991, Ch. 20, App. 2. The complaint against Respondent was based on a referral by the Court of Criminal Appeals arising out of her work in *State v. Conover*, a first degree murder case in the District Court of Ottawa County, Case No. CF–94–302, in which Conover was convicted and sentenced to death.[2] The Board held a hearing on October 20, 2000. In its Administrative Decision which followed, the Board recommended the revocation of Respondent's license. The case is now before this Court to determine whether the Board's recommendation should be accepted or rejected. See Rule 7(c).[3]

## PROCEDURAL HISTORY

¶ 2 The Board alleged the transcripts in *Conover*, supra, were incomplete, inaccurate and not in conformity with professional standards and could not be repaired, replaced or completed to be certified as accurate. The Board also alleged Respondent failed to cooperate with the Court of Criminal Appeals by failing to supply records on numerous occasions.

¶ 3 Following its hearing on October 20, 2000, the Board adopted its "Administrative Decision", on January 3, 2001, finding Respondent's conduct violated Rule 2(d) and constituted "fraud, gross incompetence, gross or habitual neglect of duty...." The Board adopted the major allegations of the complaint as its findings[4] and took official notice

---

1. Rule 2(d) and (e), 20 O.S.1991, Ch. 20, App. 2:

    d. Fraud, gross incompetence, gross or habitual neglect of duty;
    e. Intentional violation of duties, gross or habitual neglect of duties as prescribed by statute, 20 O.S. Supp.1980, Section 106.4, or any other duties prescribed by law or rule of the Board.

2. The Court of Criminal Appeals referred this matter to the Board in *Conover v. State of Oklahoma*, 1999 OK CR 26, 990 P.2d 291. Therein, the Court of Criminal Appeals remanded the case to the district court for resentencing because the trial court record was inadequate on the qualifying portion of voir dire relating to the death penalty.

3. Former Rule 7(c), applicable herein, is similar to current Rule 8(c), which provides:

    c. After filing of briefs the decision and recommendations of the Board shall stand submitted to the Supreme Court which may, *in its sole discretion, adopt or reject such recommendations in whole or in part, remand with instructions or make such other disposition as the Supreme Court may deem proper,* with or without oral argument or formal written opinion. Either party aggrieved by the decision of the Supreme Court may make application for rehearing as provided by the Rules of the Supreme Court.... [Emphasis added].

4. The Board's findings also included the following:

3. The transcripts prepared by Respondent were incomplete, inaccurate and not in conformity with professional standards and cannot be repaired, replaced or completed such that they may be certified as accurate.
4. During the appeal process the Respondent failed to cooperate with the Court of Criminal Appeals and, on numerous occasions, failed to supply records.
5. Pursuant to 20 O.S. Supp.2000, § 1502 & Chapter 20, Appendix 2, Rule 2, the Board is authorized to conduct proceedings for the purpose of a disciplinary recommendation to suspend, cancel, or revoke the enrollment of a certified or licensed shorthand reporter to the Oklahoma Supreme Court on the following grounds:
   . . .
   d. Fraud, gross incompetence, gross or habitual neglect of duty....
6. It has been conclusively established that Respondent, D.J. Thompson has violated 20 O.S. Supp.2000, § 1502, Chapter 20, Appendix 2, Rule 2. Pursuant to rule 6(D) this Board may recommend discipline based upon this violation.
7. That said conduct, as set forth herein, constitutes a violation of the Rules Governing Disciplinary Proceedings of the Oklahoma State Board of Examiners of Certified Shorthand Reporters, No. 2(d).
8. That Rule 6(D) provides that the written decision of the Board shall constitute the recommendation to the Supreme Court for or against discipline and shall state the form of discipline the Board recommends as warranted under the facts and circumstances of

of the Court of Criminal Appeals' findings in *Conover.* The Board recommended the revocation of her license, noting her right to apply for reinstatement under the Rules.

## MOTION TO DISMISS

■ ¶ 4 After the Board made its recommendation, it failed to transmit the record to this Court and to give notice to Respondent within forty-five (45) days as required by the Rules.[5] Due to an unexplained oversight, the record was not transmitted to this Court, nor was notice sent to Respondent, until October 23, 2003. She responded with a motion to dismiss, alleging the Board failed to comply with Rule 7(A). She alleged she had been denied due process and that she had already been prejudiced because of her self-imposed suspension, i.e., she has not worked as a court reporter during this interim period. The Board responded that its recommendation of license revocation is not final until this Court approves or rejects its recommendation.

¶ 5 Actions taken by the Board in disciplinary proceedings must be approved by the Supreme Court, as the Board's recommendation is advisory only.[6] Therefore, Respondent's self-imposed suspension during this time was unnecessary and, as to her unilater-

al decision to remain delinquent in the payment of her annual dues, it was unauthorized. The Board also correctly argued that although the record was transmitted after the 45–day period noted in Rule 7(A), the statute, 20 O.S.2001 § 1502, provided no time limit for the transmittal, nor any consequence for failing to do so. Although the Board's inattention to this matter for almost three years is not condoned by this Court, on May 6, 2004, we denied the motion to dismiss without prejudice to its re-urging upon this Court's consideration of the merits.

¶ 6 Respondent has again moved to dismiss, arguing that the unresolved status of her license is a denial of her due process rights. She contends the Board's dilatory action requires an automatic dismissal because the rules have the force and effect of law. We disagree.

■ ¶ 7 The Board is not an "agency" under the Oklahoma Administrative Procedures Act (OAPA), found at 75 O.S.2001 §§ 301 et seq. See Oklahoma Attorney General Opinion, 1979 OK AG 69, *Question Submitted by: Mr. Kenneth Isbell, CSR, Chairman, State Board of Examiners of Official Shorthand Reporters,* Decided 04/11/1979. Although the Legislature gave this Board the authority to make rules, the Legislature spe-

---

each case. If the recommendation is for discipline, the Board may recommend:
1) Suspension for a period of time up to one (1) year, or:
2) Cancellation of enrollment of Certified Court Reporter or revocation of a license of a Licensed Court Reporter or of the status of Acting Court Reporter.

5. Former Rule 7(A), which is identical to current Rule 8(a), provides:

A. The decision of the Board which constitutes its recommendation shall be immediately transmitted to the Supreme Court, and copies thereof mailed to the court reporter involved. The record of the proceedings before the Board relative to any decision shall be transmitted to the Clerk of the Supreme Court not later than forty-five (45) days after the date of the Board's decision, unless an extension of time for preparation of the record is granted by order of the Supreme Court. The Secretary of the Board shall promptly notify the court reporter involved and the complainant of the completion and transmittal of the record.

6. See 20 O.S. Supp.1999 § 1502 (A)(4), substantially similar to the current statute:

A. The State Board of Examiners of Certified Shorthand Reporters shall:
. . .
4. Conduct proceedings, on reasonable notice, the object of which is to recommend to the Supreme Court the suspension, cancellation, revocation or reinstatement of the enrollment of a certified or licensed shorthand reporter or of the status of any acting shorthand reporter, regular or temporary, on the following grounds:
. . .
d. fraud, gross incompetence, or gross or habitual neglect of duty,
. . . .

See also Former Rule 7(c), applicable herein, similar to current Rule 8(c), which provides that upon filing briefs, the Board's decision and recommendation stand submitted to this Court which may *"in its sole discretion, adopt or reject such recommendations in whole or in part, remand with instructions or make such other disposition as the Supreme Court may deem proper . . . ."* [Emphasis added].

cifically made the Board's powers to make rules and licensing recommendations subject to this Court's approval.[7] We acknowledge the Board is not **excluded** from the definition of "agency" under the OAPA. However, "the courts" *are* specifically excluded from its purview. 75 O.S.2001 § 250.3(3)(b). Actions taken by this Board must be approved by the Supreme Court, as the Board's recommendation is advisory only.[8] Thus, the rule-making authority, in a legislative sense, enjoyed by OAPA "agencies",[9] is inapplicable here. Rules of this Board do not supersede the statutory authority given to this Court by the Legislature to approve the Board's actions. Thus, this Court has discretion to hear this case, despite the untimely filing of the Board. We determine that Respondent has not been prejudiced by the Board's failure to comply with the 45-day transmittal requirement under Rule 7(c). Although she may have felt her license was called into question during that time as a result of the Board's recommendation, she declined to accept court reporting jobs voluntarily. She was neither required to do so, nor was she authorized to do so, prior to this Court's acceptance or rejection of the Board's recommendation. She chose to deny herself the benefits of her license. Respondent's motion to dismiss is denied.

### *DISCUSSION*

¶8 Respondent testified that she was called to appear at a hearing before Judge Haney with regard to her work in *Conover v. State,* for the purpose of correcting the transcripts. She was aware there were exhibits missing, but she did not realize until the time of the hearings that there were omissions in the death penalty qualifying portion of the

7.   20 O.S.1991 §§ 1501, 1502.

8.   See note 3, supra.

9.   This includes, *e.g.*, the Corporation Commission or the Oklahoma Tax Commission.

10.   In the Findings of Fact filed by Judge Haney on April 29, 1999, he stated:

Based upon the hearing held before this Court, it is this Court's finding that the transcripts prepared by D.J. Thompson are incom-

voir dire testimony. This was first noted by Lee Ann Peters, attorney for the defendant. During a fifteen minute break at the hearing, she had only enough time to determine the location of the omission, but not enough time to find it on the disk or to retype it. Respondent testified she had the disks and had transcribed the omitted portion but had thrown away the paperwork. She said she offered, off the record, to reproduce it, but that Judge Haney refused to let her do so.[10] She also testified that Assistant District Attorney Fred DeMier "tried to ask me if I could put it back and he got cut off."

¶9 At the hearing before the Board on October 20, 2000, she was repeatedly asked for clarification how that portion of the missing voir dire testimony was transcribed and put together and how that procedure resulted in the loss of one day of testimony. Although she proofread the testimony, she said she read it for accuracy, rather than content, and never picked up on it. She said she was unaware of the omissions until the second hearing before Judge Haney. She said she did not check the final transcript "date wise, I just proofread it by volume over a period." She said she did not notice the death qualifying portion was left out. She said she would have noticed the omission if she had proofread the sections in order.

¶10 Respondent testified that at the time of the hearing before the Board, she still had not supplied the missing portion of the transcript because she did not think it mattered anymore. She agreed she had the disks containing the missing portions and that she knew her license could be in jeopardy. She also said she had had time to complete it prior to the Board's hearing, although during that time she had experienced the death of

plete and inaccurate. It is the further finding that the transcripts of the trial and especially the voir dire portion cannot be repaired, replaced, or completed such that they can be certified as accurate and complete for transmittal to the Court of Criminal Appeals. It is also found by this Court that most, but not all exhibits tendered to the Trial Court at the time of trial, can be reproduced and replaced, but the exact exhibits, more commonly described as "pen-packs", cannot be agreed upon nor stipulated to as to the information given to the jury.

her father and was involved in a horse accident. She also said she assumed Judge Haney would not accept it now. At the end of her testimony, she described herself as "lazy" and said she considered herself now "retired".

¶ 11 Respondent testified she was led to believe she would not need an attorney at the Board's hearing because it would merely be a "friendly hearing", not adversarial. Therefore, she attended the hearing without counsel. She also testified as to the personal problems she was experiencing while preparing the *Conover* transcript. She placed great emphasis on these events as a cause for her distraction from her work. Additionally, in her brief filed in this Court, she contends the Board failed to consider these issues as mitigating factors.

### DECISION

■ ¶ 12 The actions of the Board in revoking Respondent's license reflects a desire to maintain the highest of standards among those in the court reporting profession. Respondent's testimony has shown that errors occurred when she departed from her typical method of transcription by taking sections of the voir dire testimony out of order. The error which occurred, the omission of the death penalty qualifying portion of the voir dire testimony, was determined to be so egregious that it could not be corrected. This resulted in the need to vacate the sentence of death previously imposed by the jury after a trial. Despite the attempt by the trial court to correct the record with Respondent's help, she testified she never produced the missing portion of the transcript. Respondent contends Judge Haney refused to give her more time and that she could not complete the needed corrections during a fifteen minute break. Judge Haney held, however, she had been given adequate additional time prior to the hearing. In addition, Judge Haney contended Respondent failed to appear at several previously scheduled meetings held for the purpose of determining the nature and extent of the errors and to make the corrections.

¶ 13 Respondent answers only that she was distracted because of personal matters in her life, i.e., her father's death and a horse accident. We are aware that personal tragedies in one's life can affect a person's employment and his or her job production. However, it appears from the record before us, along with the Board's Findings of Fact and Conclusions of Law, that Respondent was given an opportunity to produce the omitted portions of the transcript by holding hearings and meetings with Respondent to discover the nature of the omissions. Although given this opportunity, we determine that Respondent failed to take full advantage of the opportunity to correct the transcripts to the satisfaction of the court. It is clear Judge Haney believed that no amount of time would be sufficient in which to allow Respondent time to make the appropriate corrections to the record. Moreover, the members of the Board expressed concern about the fact that, as late as the hearing before the Board, she had never come forward with the omitted portion of the transcript, despite admitting she knew her job and her license could stand in the balance.

¶ 14 We adopt the findings and conclusions of the Board in this matter. While we acknowledge the Respondent's distraction due to personal problems, as well as her claim that she was misled into appearing *pro se*, we find the Board's recommendation of revocation of her license to be appropriate in this case. Her actions in the *Conover* case had serious consequences, and we hold that a further review of Respondent by the Board is warranted if she elects to seek reinstatement to resume her profession as a court reporter. We, therefore, hold that Respondent's license is revoked effective at the time this opinion becomes final. Respondent may apply for reinstatement of her license through compliance with Rule 9(b), or the reinstatement process then in effect.[11]

**LICENSE REVOKED.**

---

11. Respondent's reinstatement process could begin **no earlier than one year and one day** following the revocation of her license. See generally, Rule 9(a), which provides for reinstatement without further proceedings upon filing a verified application for any court reporter disciplined by **"suspension . . . for a period of one (1) year or less"**. [Emphasis added.] However, pursuant to

LAVENDER, HARGRAVE, WINCHESTER, TAYLOR, COLBERT, JJ., concur.

OPALA, V.C.J., KAUGER, J., dissent.

EDMONDSON, J., not participating.

KAUGER, J., with whom OPALA, V.C.J. joins, dissenting:

¶1 The majority allows the petitioner, Oklahoma State Board of Examiners of Certified Shorthand Reporters (Board), to proceed in licensure revocation proceedings against the respondent, D.J. Thompson (court reporter), based on charges not properly placed before this Court for a period in excess of twenty-two months. I dissent because: 1) administrative rules having the force and effect of law,[1] adopted pursuant to our approval,[2] mandate [3] that, absent a request for an extension, the record of the proceedings before the Board relative to any decision shall be transmitted to the Clerk of the Supreme Court not later than forty-five days after the date of the Board's decision; and 2) the reporter suffered actual prejudice through her self-imposed restraint in refusing to utilize her professional license during a period of almost two years when she did not perform court reporter duties because her license was in limbo—not officially revoked but not subject to our review.

## RELEVANT FACTS

¶2 On January 3, 2001, the Board issued an administrative decision recommending that the reporter's license be revoked and providing that the reporter could apply for reinstatement pursuant to the Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, 20 O.S.2001, Ch. 20, App. 2.[4] Ac-

---

Rule 9(b), a court reporter whose license was revoked must comply with more stringent requirements for reinstatement, including examination, a hearing before the Board and review by this Court.

1. *Tulsa County Budget Bd. v. Tulsa County Excise Bd.*, 2003 OK 103, ¶16, 81 P.3d 662; *Indiana Nat'l Bank v. State ex rel. Dept. of Human Serv.*, 1993 OK 101, ¶13, 857 P.2d 53.

2. Title 20 O.S.2001 § 1502 provides in pertinent part:
"A. The State Board of Examiners of Certified Shorthand Reporters shall:
... 5. Adopt, with the approval of the Supreme Court, examination standards and rules governing enrollment, discipline, suspension, cancellation and revocation proceedings and any other matter within the Board's cognizance ..."
The Court's order adopting the Board's rule was entered on October 30, 1970.
See also, Title 20 O.S.2001 § 1501 providing in pertinent part:
"... All actions of the Board shall be supervised by the Supreme Court and be subject to approval by the Court."

3. Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, 20 O.S.2001, Ch. 20, App. 2 provides in pertinent part:
"A. The decision of the Board which constitutes its recommendation shall be immediately transmitted to the Supreme Court, and copies thereof mailed to the court reporter involved. The record of the proceedings before the Board relative to any decision shall be transmitted to the Clerk of the Supreme Court not later than forty-five (45) days after the date of the Board's decision, unless an extension of time for preparation of the record is granted by order of the Supreme Court. The Secretary shall promptly notify the court reporter involved and the complainant of the completion and transmittal of the record...."
The use of "shall" can be permissive. *Cox v. State ex rel. Oklahoma Dept. of Human Servs.*, 2004 OK 17, ¶21, 87 P.3d 607; *Minie v. Hudson*, 1997 OK 26, ¶7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶9, 619 P.2d 869. Nevertheless, the general rule is that the term signifies a command. *United States through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶7, 921 P.2d 338; *State ex rel. Macy v. Freeman*, 1991 OK 59, ¶8, 814 P.2d 147; *Forest Oil Corp. v. Corp. Comm'n*, 1990 OK 58, ¶26, 807 P.2d 774.

4. Rule 8, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, 20 O.S.2001, Ch. 20, App. 2 provides in pertinent part:
"... B. Any court reporter who has been disciplined by having had his/her enrollment cancelled, who has had his/her license revoked or who has had his/her status of acting court reporter revoked by order of the Supreme Court after formal disciplinary proceedings, may seek reinstatement by filing a verified application with the Secretary of the Board and a copy with the Clerk of the Supreme Court, which application shall state:
1. The applicant's current home and business address, together with a narrative of his/her

cording to the mandatory language of Rule 7, the Board's decision should immediately have been transmitted to this Court and the record filed with the Court's Clerk not later than forty-five days after the date of the Board's decision—in this case, February 19, 2001.[5] Nevertheless, the Board did not request an extension of time and no filings were accomplished until October 23, 2003— more than twenty-two months following the Board's decision.

¶3 On November 7, 2003, the reporter filed a motion to dismiss. The motion alleges both that the filing was untimely and that the reporter suffered due process deprivations. The Board's response was filed on November 25, 2003.

## I.

¶4 **RULE 7, RULES OF THE STATE BOARD OF EXAMINERS OF OFFICIAL SHORTHAND REPORTERS, HAS THE FORCE AND EFFECT OF LAW, THE IMPRIMATUR OF THIS COURT'S APPROVAL, AND MANDATES THAT—ABSENT A REQUEST FOR AN EXTENSION— THE RECORD OF PROCEEDINGS SHALL BE TRANSMITTED TO THE SUPREME COURT CLERK WITHIN FORTY–FIVE DAYS OF THE BOARD'S DECISION.**

¶5 The Legislature may delegate rule making authority to agencies, boards and commissions to facilitate the administration of legislative policy pursuant to the Adminis-

trative Procedures Act, 75 O.S.1991 § 250 *et seq.*[6] The Legislature placed the State Board of Examiners of Certified Shorthand Reporters under this Court's supervision.[7] Furthermore, it directed the Board to adopt, **subject to our approval,** examination standards and rules governing enrollment, discipline, suspension, cancellation and revocation proceedings and any other matter within the Board's cognizance.[8] In connection with its responsibility to provide such guidelines, the Board proposed rules which were adopted by order of this Court on October 30, 1970, and on January 4, 1982.

¶6 Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, 20 O.S.2001, Ch. 20, App. 2 provides in pertinent part:

"A. The decision of the Board which constitutes its recommendation shall be immediately transmitted to the Supreme Court, and copies thereof mailed to the court reporter involved. The record of the proceedings before the Board relative to any decision **shall be transmitted to the Clerk of the Supreme Court not later than forty-five (45) days after the date of the Board's decision,** unless an extension of time for preparation of the record is granted by order of the Supreme Court. The Secretary shall promptly notify the court reporter involved and the complainant of the completion and transmittal of the record. . . ." [Emphasis provided.]

Administrative rules are valid expressions of lawmaking powers having the force and effect of law.[9] Administrative rules, like

residence and employment history during the period of cancellation or revocation;
2. That the applicant has not, during the period of his/her cancellation or revocation, been convicted of a felony or of a misdemeanor involving moral turpitude or had filed against him/her any complaint of misconduct;
3. The names of at least five (5) persons who will testify as to the good moral character of the applicant;
4. That the applicant has paid all costs of the disciplinary proceedings resulting in his/her discipline, all renewal fees due but unpaid at the time of cancellation or revocation and will pay all costs attendant to processing of his/her application for reinstatement; and
5. That the applicant has taken and successfully passed the examination prescribed by the

Board for certification of shorthand reporters. . . ."

5. The forty-fifth day following the Board's decision fell on February 17, 2001. Because the 17th was a Saturday, filing was not required until the following Monday. Title 12 O.S.2001 § 2006(A).

6. Title 75 O.S.2001 § 250.2.

7. Title 20 O.S.2001 § 1502, see note 2, supra.

8. Title 20 O.S.2001 § 1502, see note 2, supra.

9. Title 75 O.S.2001 § 308.2; *Indiana Nat'l Bank v. State ex rel. Dept. of Human Serv.*, see note 1, supra.

statutes, are given a sensible construction bearing in mind the evils intended to be avoided.[10] Nevertheless, only where intent cannot be ascertained from the rule's language, i.e. in cases of ambiguity or conflict, are rules of construction employed.[11]

¶ 7 A rule is not necessarily ambiguous for what it does not contain [12]—here, for its lack of a consequence if the record is not filed on a date certain as mandated by Rule 7.[13] This is especially so where a rule's language is clear and mandatory.[14] Rule 7 [15] unambiguously commands that the record of the proceedings **shall be** transmitted to the Clerk of the Supreme Court not later than forty-five days after the Board's decision. When the Board failed to comply with the mandates of the rule, the proceedings became subject to dismissal.

## II.

¶ 8 **THE REPORTER WAS DENIED DUE PROCESS, SUFFERING ACTUAL PREJUDICE THROUGH A SELF-IMPOSED SUSPENSION OF THE USE OF HER LICENSE BASED ON THE BOARD'S UNREASONABLE DELAY IN FORWARDING THE DISCIPLINARY RECORD TO THIS COURT.**

¶ 9 Generally, a license certificate issued on statutory authority is a property right.[16] Constitutional due process requires a high burden of proof in disciplinary proceedings against a person holding a professional license. The heightened standard exists because such proceedings involve the possible loss of a constitutionally protected property right, the loss of a livelihood, and the loss of professional reputation—a loss greater than mere monetary deprivation.[17]

¶ 10 Minimum standards of due process [18] require administrative proceedings that may directly and adversely affect legally protected interests be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and a meaningful opportunity to be heard.[19] Delay without motive may be insufficient to demonstrate a deprivation of due process.[20] However, in and of itself, delay can result in a due process denial.[21]

**10.** *Oklahoma Alcoholic Beverage Control Bd. v. Burris,* 1980 OK 58, ¶ 13, 626 P.2d 1316, 20 A.L.R.4th 593.

**11.** See, *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

**12.** See, *Keating v. Edmondson,* 2001 OK 110, ¶¶ 9–10, 37 P.3d 882.

**13.** Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, see note 3, supra.

**14.** See, *Keating v. Edmondson,* note 12 at ¶ 12, supra. See also, note 3, supra, and its discussion of the term "shall."

**15.** Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, see note 3, supra.

**16.** *Taylor v. State ex rel. Rutherford,* 1955 OK 296, 291 P.2d 1033, *appeal dismissed,* 352 U.S. 805, 77 S.Ct. 33, 1 L.Ed.2d 38 (1956).

**17.** *Johnson v. Board of Governors of Registered Dentists of State of Oklahoma,* 1996 OK 41, ¶ 20, 913 P.2d 1339.

**18.** United States Const. amend. 14, § 1 provides in pertinent part:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

**19.** *DuLaney v. Oklahoma State Dept. of Health,* 1993 OK 113, ¶ 9, 868 P.2d 676; *Harry R. Carlile Trust v. Cotton Petroleum,* 1986 OK 16, ¶¶ 12–14, 732 P.2d 438, *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987); *Cate v. Archon Oil Co.,* 1985 OK 15, ¶ 7, 695 P.2d 1352.

**20.** *Wright v. State of Oklahoma,* 2001 OK CR 19, ¶¶ 13–14, 30 P.3d 1148.

**21.** *DeLancy v. Caldwell,* 741 F.2d 1246 (10th Cir.1984).

Fundamental notions of justice, fair play and decency are offended when actual prejudice is demonstrated from an unreasonable delay.[22]

¶ 11 There is no evidence here that the failure to timely file the record was caused by anything other than the Board's neglect.[23] The Board's rules must accomplish the objective of protecting fundamental procedural due process rights and the speedy resolution of issues where delay works substantial prejudice.[24] Once the cause was submitted to the Board, it could not—without the consent or the fault of the reporter—permit unnecessary, unreasonable, unjust or unjustifiable delay.[25]

¶ 12 Delay causing substantial prejudice to a party may create a due process violation.[26] Here, the excessive delay itself—twenty-two months rather than the mandated forty-five days—has deprived the reporter of a property right, the use of her license, without due process of law. The only excuse for the delay appears to be that the case was "misplaced" while in the Attorney General's office. Justice demands that the cause be dismissed.

¶ 13 The reporter essentially gave up her property rights by self-imposing a suspension. Under the facts presented, the Board's delay in meeting Rule 7's mandatory filing date effectively deprived the reporter of her license through the form, but without the substance of due process—the recommendation of revocation was entered and the re-porter was left in limbo waiting for this Court's review of the recommendation—a review which did not take place because the record was not timely filed.

## CONCLUSION

¶ 14 The clear language of Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, provides in clear and mandatory language that the record of a disciplinary proceeding **shall be** transmitted to the Supreme Court Clerk within forty-five days of the date of the Board's decision.[27] Because of a delay to which there is no evidence she contributed, the reporter's license was in a state of "recommended revocation" for a period of twenty-two months when her record was not filed timely. It appears that because the reporter felt that she could not pursue a career as a court reporter, she submitted to a self-imposed suspension of her license awaiting a decision by this Court. The effective denial of her right to pursue a livelihood without a meaningful opportunity for review violates due process guarantees.[28]

---

22. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977), *rehearing denied*, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *Thomas v. State of Oklahoma*, 1989 OK CR 37, ¶ 17, 777 P.2d 1366.

23. See, *Fritz v. State of Oklahoma*, 1991 OK CR 62, ¶ 62, 811 P.2d 1353, *denial of habeas corpus aff'd*, 66 F.3d 338 (10th Cir.1995), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997) [No due process violation where delay was necessary for collection of evidence.].

24. See, *Halpin v. Corporation Comm'n*, 1977 OK 140, 575 P.2d 109.

25. *Community Natural Gas Co. v. Corporation Comm'n of Oklahoma*, 1938 OK 51, ¶ 0, 76 P.2d 393.

26. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Fritz v. State of Oklahoma*, see note 23, supra. See also, *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), *rehearing denied*, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977).

27. Rule 7, Rules Governing Disciplinary Proceedings of the State Board of Examiners of Official Shorthand Reporters, see note 3, supra.

28. The determination with regard to the state constitutional questions is based on Oklahoma law which provides bona fide, separate, adequate and independent grounds for our decision. *Michigan v. Long*, 463 U.S. 1032, 1039, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *Harry R. Carlile Trust v. Cotton Petroleum*, see note 19, supra; *Cate v. Archon Oil Co.*, see note 19, supra.