Jerry Wayne THOMAS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–626.

Court of Criminal Appeals of Oklahoma.

July 26, 1989.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Appellant, Jerry Wayne Thomas, was tried by a jury in Pittsburg County District

Court, Case No. F–83–177, and convicted of Conspiracy to Commit a Felony (Second Degree Forgery), After Former Conviction of Two or More Felonies (21 O.S.1981, § 421, and 21 O.S.Supp.1985, § 51(B)). The judge sentenced appellant to thirty-five (35) years' imprisonment in accordance with the jury's verdict. From this judgment and sentence, appellant has perfected his appeal to this Court.

In December of 1980, a woman named Francis Stover, now Schenck, met and moved in with appellant. Living with them in a trailer in Enterprise, Oklahoma, were Ms. Schenck's cousin, Martha Guess, now Nail, and Gary Ellington, appellant's alleged coconspirator. While staying with appellant, Ms. Schenck noticed one evening that he was drawing some sandblasting company checks. Appellant told her that he owned an interest in the sandblasting company.

Ms. Schenck informed appellant that her stepfather, Edward Huggins, had some similar checks which he had used in connection with The Party Time Donut Shop, a business he once owned. Mr. Huggins had closed the Party Time account on June 6, 1979. Appellant told Ms. Schenck that if she would steal the Party Time checks, he would alter them by removing her stepfather's former account information, and then sell them. Ms. Schenck stole the checks and gave them to appellant.

On December 20, 1980, a Party Time check was cashed at a Bestyet store in Muskogee. The check was later returned "account closed." Stanly McBride, the store clerk on duty that evening, took a photo of the man who cashed the check with a machine called a "regiscope." A regiscope is a camera kept in the store that is designed to take pictures of checks and the people who cash them. At trial, Mr. McBride identified State's Exhibit 4 as the photo of the Party Time check and the man who cashed it. Mr. McBride also identified his initials which he signed on the forged check that evening (State's Exhibit 2), and testified that the man in the regiscope picture resembled appellant. Ms. Schenck, who was waiting outside in the car when appellant cashed the check at the Bestyet store, testified that the man in the photograph was appellant. She also stated that she was unaware at that time that appellant was attempting to cash one of the Party Time checks.

A bookkeeper at the American Bank in Muskogee testified that checks drawn on the previously closed Party Time account began coming in on December 23, 1980. Between December 23, 1980, and February 2, 1981, fifty-eight Party Time checks totalling $10,135.48 were sent through the bank. Mr. Huggins, Ms. Schenck's stepfather and former proprietor of the Party Time establishment, informed the bank that these checks had been forged.

Appellant and Ms. Schenck moved from the trailer in Enterprise to Shawnee around December 21, 1980. Gary Ellington came to visit them there on at least one occasion. On February 26, 1981, in Burkburnett, Texas, Mr. Ellington was arrested after a warranted search of his motel room uncovered some Oklahoma drivers licenses, various items used to make drivers licenses, and some blank Party Time checks. Although the search of Mr. Ellington's room was in no way related to appellant or to any activities in Oklahoma, Tommy Graham of the Oklahoma State Bureau of Investigation became involved apparently because of the Party Time checks drawn on an Oklahoma bank and the Oklahoma licenses discovered, which were all found in Mr. Ellington's possession.

On June 4, 1981, in Pittsburg County, Oklahoma, Mr. Ellington was charged with second degree forgery. (State's Exhibits 6, 8) He pled guilty, admitting that on January 16, 1981, he had forged a Party Time check at a Dollar Saver Deli in Pittsburg County. (State's Exhibit 3) On April 28, 1983, the conspiracy charge in the instant case was filed against appellant. (O.R. 1) Ms. Schenck testified at trial that the State had neither filed charges against her, nor offered anything in exchange for her testimony.

In his first proposition, appellant sets forth two reasons why the evidence presented was insufficient to convict him of conspiracy to commit second degree forgery. First, he argues that the only incriminating evidence against him was presented through the uncorroborated testimony of Francis Schenck, who he claims was an accomplice to the charged conspiracy. He asserts that this uncorroborated accomplice testimony could not as a matter of law have supported his conviction, and that the jury could not have reached a rational determination of guilt beyond a reasonable doubt solely on the basis of the remaining properly admitted but weak evidence. Secondly, even assuming that Ms. Schenck's testimony had been properly corroborated, appellant asserts that it was nonetheless insufficient because it did not support a rational finding of guilt beyond a reasonable doubt.

■ We agree with appellant that Ms. Schenck was an accomplice to the crime with which he was charged, and that as such her testimony had to be properly corroborated. To be an accomplice, a witness's involvement in the crime must have been such as to render him or her a "principal" under 21 O.S.1981, § 172. "Principals" are "[a]ll persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present...." 21 O.S.1981, § 172. As a general rule, if a witness could be indicted for the offense with which the accused has been charged, the witness is an accomplice. *Cox v. State*, 726 P.2d 909, 910 (Okl.Cr. 1986); *Frye v. State*, 606 P.2d 599, 606 (Okl.Cr.1980).

Ms. Schenck aided and abetted the conspiracy to commit second degree forgery by willingly stealing the Party Time checks from her stepfather, Mr. Huggins. After seeing appellant draw some checks on a sandblasting company, Ms. Schenck volunteered that her stepfather had some similar business checks which he had used in connection with a donut shop he once owned. Appellant told Ms. Schenck that if she would steal Huggins's checks, he would alter and then sell them. Fully aware that the checks would eventually be used by someone other than her stepfather and thus for an unlawful purpose, Ms. Schenck willingly stole them. As a principal who aided and abetted the commission of the conspiracy, Ms. Schenck was also an accomplice. *Frye*, 606 P.2d at 606.

Because she was an accomplice in the conspiracy, she was also a coconspirator. *See Geiger v. State*, 25 Okl.Cr. 439, 221 P. 122, 124 (1924). *See also Johns v. State*, 742 P.2d 1142, 1146 (Okl.Cr.1987); *Cox*, 726 P.2d at 910. While Ms. Schenck testified that she effectively withdrew from the conspiracy on January 20, 1981, when she ceased living with appellant and returned to Muskogee (Tr. I, 45), this withdrawal came *after* the "overt acts" of December 20, 1980, and January 16, 1981, which were alleged in the information filed against appellant. (O.R. 1) Ms. Schenck's abandonment was therefore ineffective. *Blaylock v. State*, 598 P.2d 251, 254 (Okl.Cr.1979).

■ We also find that Ms. Schenck's testimony was corroborated and was therefore properly admitted evidence upon which a valid conviction could be based. Although Ms. Schenck was a coconspirator as well as an accomplice, 22 O.S.1981, § 742 provides the proper formula for determining whether her testimony was sufficiently corroborated. *See Johns* at 1146; *Cox* at 910. *See also* Commission Comment, OUJI–CR–840 (1980). To be sufficiently corroborative of accomplice testimony under Section 742, evidence must tend "to connect the [appellant] with the commission of the offense, and ... is not sufficient if it merely shows the commission of the offense or circumstances thereof." *See also* OUJI–CR–836 (1980).

The following evidence corroborated Ms. Schenck's testimony: Martha Guess, Ms. Schenck's cousin, testified that she and Ms. Schenck and appellant and Mr. Ellington all lived together in Enterprise, Oklahoma; Ed

Huggins, Ms. Schenck's stepfather, testified that Ms. Schenck had "free run" of his house from May to December, 1980, and that during that time, the remainder of his Party Time checks were kept in a closet there; Stanly McBride testified that the man in the photograph which he took, who had cashed a Party Time check at the Bestyet store on December 20, 1980, resembled appellant; Ms. Guess saw Ellington purchase a check protector some time before December 29, 1980, and both the Party Time check appellant cashed at the Best Yet store and the one cashed by Ellington at the Dollar Saver Deli had been filled out with a check protector (*see* State's Exhibit 4); Ms. Guess testified that while the four were living together, she received a fake drivers license from either appellant or Ellington; Ellington was arrested in Texas in possession of Oklahoma licenses and equipment to make false licenses; when Ellington was arrested in Texas, he had some of the Party Time checks; Ms. Guess testified that appellant had given those Party Time checks to Ellington.

The circumstances presented by this evidence connected appellant to the perpetrator, Gary Ellington, as well as to the crime of conspiracy to commit second degree forgery. *See Frye*, 606 P.2d at 606–07. *Contra Brown v. State*, 753 P.2d 1368, 1370 (Okl.Cr.1988). While none of the evidence *directly* proved the existence of an agreement between appellant and Ellington, the fact that they lived together, that they both forged Party Time checks filled in with a typewriter and check protector, and that Ellington was later found with some Party Time checks, was all circumstantial proof of collusion. We find that Ms. Schenck's testimony was corroborated as to at least one material fact, and thus that the jury could have properly inferred that all of her testimony was true. *Maxwell v. State*, 742 P.2d 1165, 1169 (Okl.Cr.1987). Appellant's first argument in support of his claim of insufficiency of the evidence is denied.

Appellant's second argument is that the evidence presented was insufficient to sup-

port a rational finding of guilt beyond a reasonable doubt. We find that the aforementioned evidence was sufficient to support the jury's verdict. *King v. State*, 761 P.2d 903, 905 (Okl.Cr.1988); *Spuehler v. State*, 709 P.2d 202, 203 (Okl.Cr.1985). Appellant's first proposition is denied.

For his second proposition, appellant argues that the trial court committed fundamental error by failing to instruct the jury that Francis Schenck's testimony had to be corroborated. Appellant concedes that defense counsel failed to request any "accomplice" instructions. (Appellant's Brief 4) Accordingly, appellant has waived this issue on appeal. *Peninger v. State*, 721 P.2d 1338, 1341 (Okl.Cr.1986). Notwithstanding appellant's waiver, there was, as we have already found, sufficient evidence to corroborate accomplice Schenck's testimony. Therefore, the trial court's failure to administer instructions on accomplice testimony does not warrant reversal. *Id. See also Smith v. State*, 727 P.2d 1366, 1371 (Okl.Cr.1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987), *reh'g denied*, 483 U.S. 1044, 108 S.Ct. 17, 97 L.Ed.2d 806 (1987).

■ In his third and final proposition, appellant claims that he was denied his due process right to a fair trial because the prosecutor filed the information against him twenty-eight months after the commission of the offense, and did so then only in retaliation for appellant having filed a motion to dismiss in a related case. Because we find no evidence to suggest that retaliation was a motive for the charge filed in the instant case, we will not consider this argument.

While the delay of which appellant complains is a "pre-accusation" delay and thus does not fall within the Sixth Amendment's speedy trial guarantee, the Due Process Clause may in some instances require dismissal of charges filed unreasonably late. *Green v. State*, 713 P.2d 1032, 1035–36 (Okl.Cr.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). Fundamental notions of justice protected by

the Due Process Clause are offended "when the accused demonstrates actual prejudice from an unreasonable delay on the part of the State." *Id.* at 1036 (emphasis omittéd) (citations omitted). However, an accused must establish actual prejudice as a threshold requirement to a review based upon due process violations. *Id.*

Appellant has failed to make the required showing of actual prejudice. He claims that he suffered prejudice as a result of the delay in filing charges because one of his intended witnesses, Audry Cross, was killed before trial, and another, Steve King, could no longer be located. We note, however, that neither the testimony given by appellant nor the evidence argued by defense counsel at the hearing on the motion to dismiss included any statement or information as to what the testimony of these two witnesses would have been. Consequently, we cannot now determine whether their testimony would have affected the outcome of appellant's trial. *See id.* Furthermore, appellant made no showing, at least as to Witness King, that Mr. King could have been obtained had there been no pre-accusation delay. *Id.* at 1036. Appellant's third proposition is denied.

Finding no error, judgment and sentence is AFFIRMED.

LANE, V.P.J., and LUMPKIN, J., concur.

PARKS, P.J., specially concurring.

BUSSEY, J., not participating.