2014 OK 37

**Phillip Ryan PIERCE, Plaintiff/Appellee,**

**v.**

**STATE of Oklahoma ex rel. DEPART-MENT OF PUBLIC SAFETY, De-fendant/Appellant.**

**Nos. 111,418, 111,419, 111,420.**

Supreme Court of Oklahoma.

May 6, 2014.

Barry K. Roberts, Norman, Oklahoma, Dave Stockwell, Stockwell Law Offices, Norman, Oklahoma, for plaintiff/appellee.

Brian Kieth Morton, Department of Public Safety, Assistant General Counsel, Oklahoma City, Oklahoma, for defendant/appellant.

WATT, J.:

¶ 1 Certiorari was granted to address a single issue.[1] Was the delay of approximately twenty months in scheduling a revocation hearing aimed at suspending the driving privileges of the plaintiff/appellee was a violation of the constitutional right to a speedy trial guaranteed by the Okla. Const. art. 2, § 6?[2]

---

**1.** The Court of Civil Appeals issued opinions in the two companion cases, both of which were reversed and remanded to the trial court for consideration of all factors related to the issue of whether a constitutional right to a speedy trial was violated. See, ¶ 8 and accompanying footnotes, infra. See, No. 111,420, *Macey v. State of Oklahoma ex rel. Dept. of Public Safety*, (November 15, 2013) [Mandate issued December 13, 2013]; No. 111,419, *Irlando v. State of Oklahoma ex rel. Dept. of Public Safety* (November 15, 2013) [Mandate issued on November 15, 2013].

**2.** The Okla. Const. art. 2, § 6 provides:
   "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."
Although the United States Const. does not have a constitutional provision identical to art. 2, § 6, the Sixth Amendment guarantees the right to a speedy and public trial, providing in pertinent part:

¶2 The driver lived under the cloud of a pending revocation proceeding for some twenty (20) months. Knowing that its complaining witness was scheduled to be deployed to serve his country, the Department intentionally delayed a hearing, not only depriving the driver of being heard on the merits but also denying his opportunity to oppose the delay. It did so despite the fact that the arresting officer was available to testify for the five (5) months preceding deployment. He could also have been called to testify *via* subpoena, on an emergency basis for an additional, three (3) months.[3] Once he returned from his assignment, the Department again was slow to docket the proceeding, waiting for more than a month after the officer returned stateside. The unwarranted delay to schedule an administrative proceeding occurred despite the driver's timely request for a hearing. We hold that, under the unique facts presented, the driver's right to a speedy hearing, guaranteed by the Okla. Const. art. 2, § 6, was violated and order reinstatement of his driving privileges.

## FACTS AND PROCEDURAL HISTORY

¶3 On October 31, 2010, Pierce was stopped on suspicion of driving while intoxicated by a University of Oklahoma police officer, Sergeant Bishop. Bishop then contacted Officer Hewett (Hewett), who with the aide of another officer, administered field tests to detect intoxication. Pierce failed these tests and a blood sample was taken. Hewitt executed an arrest. **The following day, on November 1, 2010, Pierce filed a timely request for an administrative hearing to contest revocation of his driver's license.**[4]

¶4 For a period of approximately eight months following the driver's request for a hearing, Hewitt was in the United States. In April of that year, he was called to active duty as a member of the Oklahoma National Guard. Nevertheless, he was able to attend court in Cleveland County during this period. Furthermore, the arresting officer testified that he could have been available for a hearing on an emergency basis until he left the country in July 2011 for Kuwait.[5] Hewett was back in Cleveland County by April of 2012. However, **the administrative hearing, requested in November of 2010, did not take place until approximately twenty (20) months later on June 8, 2012.** At the conclusion of the hearing, Pierce's drivers' license was suspended for one-hundred-and-eighty (180) days. Less than a week later, the driver appealed the revocation to the district court.[6]

---

"In criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ."

3. See, ¶4 and accompanying footnotes, infra.

4. Title 47 O.S.2011 § 754(D) providing in pertinent part:

"Upon the written request of a person whose driving privilege has been revoked or denied by notice given in accordance with this section or Section 2–116 of this title, the Department shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after the notice. . . ."

5. Transcript of proceedings, August 16, 2012, Officer Justin Hewett testifying in pertinent part:

at pp. 33–34 "... Q. Do you recall when you left [the United States]?
A. I left for Fort Sill in March. I left for Mississippi in April. And I arrived in Kuwait in July of—all in 2011 . . . ."
at p. 37. "... THE COURT: So you were available until at least March of 2011, and could

have been available, I guess, on an emergency basis until you actually left the country?
THE WITNESS: Correct. . . ."

6. Title 47 O.S.2011 § 755 providing in pertinent part:

"If the revocation or denial is sustained, the person whose license or permit to drive or nonresident operating privilege has been revoked or denied may file a petition for appeal in the district court in the manner and subject to the proceedings provided for in Section 6–211 of this title . . ."
Title 47 O.S.2011 § 6–211 providing in pertinent part:
"A. Any person denied driving privileges, or whose driving privilege has been cancelled, denied, suspended or revoked by the Department ... shall have the right of appeal to the district court as hereinafter provided. . . .
E. The petition shall be filed within thirty (30) days after the order has been served upon the person, except a petition relating to an implied consent revocation shall be filed within thirty (30) days after the Department gives notice to the person that the revocation is sustained ... It shall be the duty of the district court to enter

¶ 5 The district court heard the matter on August 16, 2012. Although Pierce did not dispute the procedures or results of the tests and investigation, he did argue that his constitutional right to a speedy resolution of the cause, as guaranteed by the Okla. Const. art. 2, § 6,[7] was denied. The trial court agreed and reversed and vacated Pierce's driving prohibition, reinstating his drivers' license. Over a vigorous dissent, the majority of the Court of Civil Appeals reversed.

¶ 6 Pierce filed a petition for rehearing before the Court of Civil Appeals which was denied on December 13, 2013. Thereafter, the driver filed a timely petition for certiorari on January 2, 2014. The Department filed for an extension to respond thereto. The response was received on February 3rd to which Pierce replied on the 13th. The record was received from the Court of Civil Appeals on March 25, 2014. Certiorari was granted the same day.

### Constitutional issues are subject to *de novo* review.

¶ 7 Whether an individual's procedural due process rights have been violated is a question of constitutional fact which is reviewed *de novo*.[8] *De novo* review requires an independent, non-deferential re-examination of the administrative agency's legal rulings.[9]

¶ 8 The right to a speedy and certain remedy without delay, in a civil proceeding, is one of the rights enjoyed by Oklahoma citizens,[10] including drivers having a recognized property interest[11] in the license that allows them to travel freely through the uti-

lization of an automotive vehicle. In determining whether Pierce suffered a deprivation of that right in this civil proceeding, we consider four factors: 1) the length of the delay; 2) the reason for the delay; 3) the party's assertion of the right; and 4) the prejudice to the party occasioned by the delay.[12]

¶ 9 **Under the unique facts presented, the twenty (20) month delay in scheduling an administrative hearing violated the driver's right to a speedy trial guaranteed by the Okla. Const. art. 2, § 6.**

¶ 10 **a) The Department had a sufficient period of time, between five and eight months, to either present the arresting officer to testify or to secure his testimony in some other appropriate manner.**

¶ 11 The Department asserts that its delay of some twenty (20) months in scheduling a revocation proceeding in the instant cause is justified, largely on an argument that its complaining witness was unavailable. Pierce points out that for a minimum of five (5) months following his being detained, the arresting officer was easily available to testify in a proceeding in Cleveland County and could have been made available, on an emergency basis, for the following three months.[13] In an alternative argument, the Department insists that budgetary and personnel matters kept it from setting Pierce's revocation hearing at an earlier date. The Department's arguments are unconvincing.

¶ 12 The most troubling factor in this cause is the one that the trial court recog-

---

an order setting the matter for hearing not less than fifteen (15) days and not more than thirty (30) days from the date the petition is filed.... M. An appeal may be taken by the person or by the Department from the order or judgment of the district court to the Supreme Court of the State of Oklahoma as otherwise provided by law."

7.  The Okla. Const. art. 2, § 6, see note 2, supra.

8.  *Matter of A.M. and R.W.*, 2000 OK 82, ¶ 6, 13 P.3d 484.

9.  *Id.; Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, fn. 1, 932 P.2d 1100.

10.  *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Maddox*, see note 22, infra; *Flandermeyer v. Bonner*, see note 22, infra; *Meadows v. Meadows*, see note 22, infra.

11.  *Price v. Reed*, see note 23, infra.

12.  *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Mothershed*, 2011 OK 84, ¶ 64, 264 P.3d 1197; *Flandermeyer v. Bonner*, see note 22, infra, explaining *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1973) and citing *Civil Serv. Comm'n of the City of Tulsa v. Gresham*, see note 22, infra.

13.  See, ¶ 4 and accompanying footnotes, supra.

nized, a delay of some twenty (20) months when, for a period of some eight (8) months, the Department's witness was available and able to testify either in person or telephonically. Originally, the Department blamed the delay on budget cuts, limited personnel, and the number of DUI's being filed.[14] This argument makes the Department's assertion that the delay was "totally ... due to the unavailability of the witness" less than convincing.[15]

### ¶ 13 b) The delay in scheduling of an administrative hearing rests entirely with the Department.

¶ 14 All the facts indicate that the driver acted in a timely fashion from the date of his arrest until the time of filing for certiorari to have this matter resolved at the first opportunity. However, the Department, on February 8, 2011, **three months before the arresting officer actually left the United States and two months after the Department received the results of Pierce's blood tests,** asked the arresting officer to compile a list of cases which needed to be postponed because he would be the testifying witness. In so doing, the Department advised the arresting officer's supervisor that **the appeal to the district court might be heard three months in the future.**[16] Clearly, at least in this case, if the Department had acted promptly in hearing the matter, *i.e.* by filing the cause shortly after having received the blood level evidence, absence of the arresting officer for appeal purposes would have presented **no problem as this would have afforded the Department a minimum of five (5) months and a maximum of eight (8) months to complete the appeal.**

¶ 15 **The ultimate responsibility for the delay was the Department's deliberate ac-**

14. Transcript of Proceedings, August 16, 2012, Ms. Murray arguing before the trial court at pp. 22 and 25:

> "... MS. MURRAY: Your Honor, may I please make my argument for the record?
> THE COURT: Yes.
> MS. MURRAY: Thank you. There is no right to a speedy trial in a civil case....
> [W]e have only a certain budget and a finite number of employees, but we have zero control over the number of drunk drivers in the State of Oklahoma and over the number of officer arrests of those drunk drivers....
> [T]here's so many DUIs in the state that DPS can't keep up...."

15. Transcript of Proceedings, August 16, 2012, Ms. Murray's response to the trial court's inquiry providing in pertinent part at p. 28:

> "... THE COURT: What I'm trying to find out ma'am, is this: Was the reason for the delay in the hearing due to the unavailability of the witness, the officer, or was it due to the unavailability of time to hear it?
> MS. MURRAY: **In this case, it would have totally been due to the unavailability of the witness. The witness in this case ...**" [Emphasis provided.]

16. Transcript of Proceedings, August 16, 2012, Sergeant John Bishop testifying in pertinent part at pp. 44–45:

> "... Q (By Mr. Stockwell) Sergeant Bishop, those two pieces of paper you gave me, one is a full document, the other just has writing on the very top. Would you—referring to that, would you read that into the record, please. And when you do that, indicate who it's from and who it's to.
> A. Okay. I'll do it in chronological order. I think that'll help. It's communication from DeAnn Taylor to Officer Justin Hewett on Tuesday, February 8th at 1306 or 1:06 p.m. The e-mail says, To Justin, please send me a list of all cases, if any, that you are current—that you currently have pending that we need to continue at the administrative level. And it's signed DeAnn Taylor.
> Q. That was February 8, 2011?
> A. Yes, sir. February 8, 2011.
> Justin Hewett responds to DeAnn Taylor, DeAnn, here are the remaining implied consent hearings before I deploy. And he list off one, two, three, four, five, six, seven cases, and it's signed Justin Hewett.
> And then DeAnn copied Justin Hewett, myself, and another supervisor as she addressed Justin Hewett or as she addressed a person, Tammy West, I believe, from DPS, and that correspondence says, Tammy, here's a list of the IC, implied consent, hearings that we need to be continued. The hearings are not to be reset until we receive notification that Justin is back from deployment and able to handle the hearings. And it's signed DeAnn.
> Q. Did you have any communication with DeAnn Taylor regarding why continue the hearings and not just have them now?
> A. Yeah. We—I was trying to keep an open communication with all the courts and DeAnn, and I spoke about why we were continuing the hearings. And she advised that if the hearing—the implied consent hearing was set and it went to a district court appeal, that the district court appeal could be up to three months away depending on their log, and the witnesses would be unavailable to testify and they would have to have that witness to testify after the implied consent hearing...."

tion in postponing the cause. Such a delay weighs heavily against the governmental entity responsible for the same.[17] This matter could have been resolved during a time period when the arresting officer was available to appear in person. Even were that not so, the arresting officer's testimony could have been preserved in some appropriate manner or he could have appeared telephonically. Therefore, under the facts presented, the delay between arrest and the administrative hearing was unreasonable.

¶ 16 c) **Pierce's failure to assert the right to a speedy trial prior to review before the district court did not prohibit that tribunal, or this Court, from reviewing a constitutional challenge on appeal which is vested with strong public policy concerns for the state and for drivers.**

¶ 17 The Department insists that the trial court was without jurisdiction to hear the speedy trial argument as it was not presented in the initial hearing in the administrative process. Pierce argues that he had no obligation to raise the claim as the law makes the assertion for him. Although the driver's underlying argument is not appropriate here,[18] we agree with Pierce that the trial court had jurisdiction to determine the speedy trial claim. The failure to specifically assert the right can make it difficult to prove a denial of a speedy trial.[19] Nevertheless, it is unquestioned that Pierce requested an administrative hearing less than twenty-four (24) hours after he was arrested. Furthermore, we agree with Pierce that it would have been appropriate for the trial court to have heard and determined the speedy trial issue, while the arresting officer was in the United States and before he was deployed to Kuwait.

¶ 18 Title 47 O.S.2011 § 754(F).[20] outlines the scope of the hearing by either the Commissioner of Public Safety or a designated hearing officer. Nothing in the statute provides for the Commissioner of Public Safety or the designated hearing officer to hear constitutional challenges. Furthermore, it has long been recognized that public interest issues may be considered on appeal upon a theory not presented to the trial court.[21]

---

**17.** *Ellis v. State*, 2003 OK CR 18, ¶ 47, 76 P.3d 1131.

**18.** Generally, the law will make assertion if the party is incarcerated. See, *State of Oklahoma ex rel. Trusty v. Graham*, 1974 OK CR 146, 525 P.2d 1231; *Davidson v. State*, 1946 OK CR ——, 82 Okla.Crim. 402, 171 P.2d 640.

**19.** *Barker v. Wingo*, see note 12, supra.

**20.** Title 47 O.S.2011 § 754(F) provides:

"The hearing before the Commissioner of Public Safety or a designated hearing officer shall be conducted in the county of arrest or may be conducted by telephone conference call. The hearing may be recorded and its scope shall cover the issues of whether the officer had a reasonable ground to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest.
1. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, the scope of the hearing shall also cover the issues as to whether:
a. if timely requested by the person, the person was not denied a breath or blood test,
b. the specimen was obtained from the person within two (2) hours of the arrest of the person,
c. the person, if under twenty-one (21) years of age, was advised that driving privileges would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,
d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more, and
e. The test result in fact reflects the alcohol concentration.
2. If the revocation or denial is based upon the refusal of the person to submit to a breath or blood test, reflected in a sworn report by a law enforcement officer, the scope of the hearing shall also include whether:
a. the person refused to submit to the test or tests, and
b. the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests."

**21.** *Starkey v. Oklahoma Dept. of Corrections*, 2013 OK 43, fn. 30, 305 P.3d 1004; *Davis v. GHS*

Most certainly, the right to a speedy and certain remedy without delay, in a civil proceeding, is one of the rights enjoyed by the citizens of Oklahoma.[22] This Court has also determined that a person's claim to a driver's license is indeed a protected property interest entitled to application of due process standards.[23] No doubt, the interest of the states in depriving drunk drivers of permission to continue operating an automobile is particularly strong.[24]

¶ 19 Finally, there is a strong public interest in ensuring that drunk drivers are not on our highways and byways and that drivers are afforded constitutional protections to ensure that their property interests, in the form of drivers' licenses, are honored. We determine the trial court had authority to address the deprivation issue as presented in the form of an argument encasing the issue of deprivation of the right to a speedy trial.

¶ 20 **d) Undoubtedly, the driver suffered some prejudice simply because the state of his driving privileges, though not revoked, remained in limbo for almost two years.**

¶ 21 The Department insists that, because Pierce did not testify or present any "direct"

evidence of prejudice, his speedy trial claim must fail. Conversely, Pierce argues that living under the cloud of concern that he was in danger of losing a property interest and having his driving privileges revoked was, in itself, evidence of prejudice. Although this may not be the most clear case of delay causing prejudice, under the facts presented, the potential loss of a property interest is sufficient to meet this prong of the four-part test of deprivation of the right to a speedy trial.

¶ 22 The delay here was neither minimal nor reasonable. The delay, no element of which was under the control of the driver, spanned almost two (2) years.[25] The Department had a sufficient time between the arrest and the date its material witness would be unavailable to either hold the hearing or preserve the arresting officer's testimony. The failure to hold a timely hearing most certainly contravened the Legislature's intent that these matters be handled in a timely manner.[26]

## CONCLUSION

■ ¶ 23 Minimum standards of due process[27] require administrative proceedings

---

*Health Maint. Org. Inc.*, 2001 OK 3, ¶ 25, 22 P.3d 1204. See also, *Simons v. Brashears Transfer & Storage*, 1959 OK 156, ¶ 24, 344 P.2d 1107.

22. *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Maddox*, 2006 OK 95, fn. 11, 152 P.3d 204; *Flandermeyer v. Bonner*, 2006 OK 87, ¶ 11, 152 P.3d 195; *Meadows v. Meadows*, 1980 OK 158, ¶ 7, 619 P.2d 598. See also, *Civil Service Commission of the City of Tulsa v. Gresham*, 1982 OK 125, ¶¶ 38–40, 653 P.2d 920.

23. *Price v. Reed*, 1986 OK 43, ¶ 19, 725 P.2d 1254.

24. *Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 3516, 77 L.Ed.2d 1267(1983); *Price v. Reed*, see note 23, supra. Argument before the trial court in *Irlando v. Commissioner of the Dept. of Public Safety*, No. 111, 419, provided that there are some thirty-thousand (30,000) arrests for driving under the influence in Oklahoma annually, and that ten-thousand (10,000) of those cases go through the administrative hearing process. Transcript of Partial Proceedings, July 30, 2012, p. 14.

25. See, *State ex rel. Oklahoma Bar Ass'n v. Mothershed*, note 12, supra [Six-month delay in holding trial panel hearing did not violate attorney's

constitutional right to a speedy trial in a civil proceeding.].

26. The short-fuse time limits the Legislature imposes upon the plaintiffs in revocation proceedings indicates that it intended that these matters be dealt with judiciously so that those driving under the influence on Oklahoma's byways and highways could be quickly stopped from continuing with such practices. See, 47 O.S.2011 § 754(D), note 4, supra, giving a driver fifteen (15) days to request a hearing before the Department. See also, 47 O.S. § 6–211, giving drivers thirty (30) days to file an appeal from a revocation and requiring the district court to set a hearing within fifteen (15) days and not more than thirty (30) days from the date of the petition.

27. United States Const. amend. 14, § 1 providing in pertinent part:

"... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

that may directly and adversely affect legally protected interests be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and a meaningful opportunity to be heard.[28] Delay without motive may be insufficient to demonstrate a deprivation of due process.[29] However, in and of itself, delay can result in a due process denial.[30] Fundamental notions of justice, fair play, and decency are offended when actual prejudice is demonstrated from an unreasonable delay.[31]

¶ 24 Research reveals that the resolution of the question presented is largely governed by the facts of the cause.[32] Limbo serves no one well when a property interest hangs in the balance.[33] Delay, in and of itself, can result in a due process denial.[34] Pierce showed at least some prejudice because of the delay. The Department showed none for its intentional postponement of the proceedings for some twenty (20) months.[35] Pierce lived under the cloud of a pending revocation proceeding for approximately twenty (20) months. Knowing that its complaining witness was scheduled to be deployed to serve his country, the Department intentionally postponed the proceeding and did not schedule a hearing to allow the driver to be heard either on the merits or on the delay. The Department took these actions although the arresting officer would have been available for a hearing during the five (5) months preceding his deployment and during an additional three (3) months of training. Furthermore, it delayed the hearing for more than a month after the officer returned stateside. These delays occurred despite the driver's timely request for a hearing. Under these unique facts, we hold that the driver's right to a speedy hearing, guaranteed by the Okla. Const. art. 2, § 6,[36] was violated and order reinstatement of his driving privileges.

## COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.

COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, COMBS, JJ., CONCUR.

The Okla. Const. art. 2, § 7 provides:
"No person shall be deprived of life, liberty, or property, without due process of law."
Oklahoma's due process clause is coextensive with its federal counterpart and may, in some situations, afford greater due process protections than its federal counterpart. *State ex rel. Board of Regents of the University of Oklahoma v. Lucas*, 2013 OK 14, fn. 25, 297 P.3d 378; *Oklahoma Corrections Professional Ass'n, Inc. v. Jackson*, 2012 OK 53, fn. 13, 280 P.3d 959.

**28.** *DuLaney v. Oklahoma State Dept. of Health*, 1993 OK 113, ¶ 9, 868 P.2d 676; *Harry R. Carlile Trust v. Cotton Petroleum*, 1986 OK 16, ¶¶ 12–14, 732 P.2d 438, *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987); *Cate v. Archon Oil Co.*, 1985 OK 15, ¶ 7, 695 P.2d 1352.

**29.** *Wright v. State of Oklahoma*, 2001 OK CR 19, ¶¶ 13–14, 30 P.3d 1148.

**30.** *DeLancy v. Caldwell*, 741 F.2d 1246 (10th Cir.1984).

**31.** *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977), *rehearing denied*, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *Thomas v. State of Oklahoma*, 1989 OK CR 37, ¶ 17, 777 P.2d 1366.

**32.** *State v. Steigelman*, 2013 MT 153, 302 P.3d 396 [426–day delay not violation of right to speedy trial.]; *State v. Stops*, 2013 MT 131, 301 P.3d 811 [740 days not too long when defendant responsible for delays.]; *Rodgers v. State*, 2011 WY 158, 265 P.3d 235 [180–day delay not unrea-
sonable delay of speedy trial when delays caused by defendant.]; *Seteren v. State*, 2007 WY 144, 167 P.3d 20 [5–year delay not prejudicial to speedy trial rights where reason was full docket.]; *Flandermeyer v. Bonner*, see note 22, supra [One-year delay of an estimated one-day trial did not implicate speedy trial constitutional concerns where delays were more attributable to the actions of parties than to trial court.]; *State v. Superior Court*, 162 Ariz. 302, 783 P.2d 241 (1989)[120 day delay not violation of right to speedy trial where defendant incarcerated.]; *Ward v. State*, 325 Ga.App. 890, 756 S.E.2d 21 (2014) [Six-year delay not too long where right to speedy trial not persevered.]; *State v. Johnson*, 325 Ga.App. 128, 749 S.E.2d 828 (2013) [Delay of 33 months presumptively prejudicial.]; *State v. Takyi*, 314 Ga.App. 444, 724 S.E.2d 459 (2013) [18–month delay was unreasonable delay against State.]; *Sechler v. State*, 316 Ga.App. 675, 730 S.E.2d 142 (2012) [44–month delay uncommonly long and required to be weighed against state.].

**33.** *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Maddox*, see note 22, supra.

**34.** *DeLancy v. Caldwell*, 741 F.2d 1246 (10th Cir.1984).

**35.** Under such facts, a delay of fifteen (15) months in a criminal proceeding was found to be inordinately unreasonable. *State ex rel. Trusty v. Graham*, see note 18, supra.

**36.** The Okla. Const. art. 2, § 6, see note 2, supra.

WINCHESTER, TAYLOR, GURICH, JJ., DISSENT.

KAUGER, J., NOT PARTICIPATING.