2016 OK CIV APP 49

**Brandon Chase RYAN, Plaintiff/Appellant,**

v.

**COMMISSIONER OF THE DEPARTMENT OF PUBLIC SAFETY, State of Oklahoma, Defendant/Appellee.**

**Case Number: 114375**

Court of Civil Appeals of Oklahoma, Division No. 3, **DIVISION III.**

Decided: 01/15/2016

Mandate Issued: 07/26/2016

Todd Kernal, Laird, Hammons, Laird, Oklahoma City, Oklahoma, for Plaintiff/Appellant,

Heather M. Poole, Assistant General Counsel, Oklahoma City, Oklahoma, for Defendant/Appellee.

Wm. C. Hetherington, Jr., Judge:

¶1 Brandon Chase Ryan (Ryan) appeals from an adverse District Court ruling declining to reverse a Department of Public Safety (DPS) administrative revocation of Ryan's driver's license. Ryan challenged the time period of almost fourteen months[1] between his notice of revocation and administrative hearing as being a constitutional denial of his due process rights to a speedy trial. We apply the four factors delineated in *Pierce v. State ex rel. Dept. of Public Safety*, 2014 OK 37, ¶8, 327 P.3d 530 to the case before us and **reverse** the revocation.

## FACTS

¶2 The facts are not in dispute that Ryan was arrested on a DUI suspicion charge April 4, 2014 and refused the blood test. Ryan timely requested an administrative hearing which was acknowledged by DPS on June 3, 2014. Ryan's revocation was stayed and his driver's license returned to him during the appeal process and he again received notice of the pending hearing on March 31, 2015. The hearing was finally set for May 18, 2015 and Ryan's counsel received notice of the hearing on April 14, 2015. Following hearing and evidence taken on May 18th, the hearing examiner sustained the revocation of Ryan's license to drive. Ryan then timely appealed to the District Court. Following *de novo* trial with ruling taken under advisement, the District Court upheld the revocation by Order filed September 22, 2015, finding no due process speedy trial violation. Ryan appeals from that Order.

## STANDARD OF REVIEW

¶3 Ryan's appeal challenges the timeliness of the administrative hearing and raises constitutional due process issues. The question of whether or not DPS denied Ryan of procedural due process by the delay in his administrative hearing is a pure question of law reviewed *de novo*. *Pierce v. State ex rel. Dept. of Public Safety*, 2014 OK 37, ¶7, 327 P.3d 530; *In Re Adoption of K.P.M.A.*, 2014 OK 85, ¶12, 341 P.3d 38; *Matter of A.M. and R.W.*, 2000 OK 82, ¶6, 13 P.3d 484. *De novo* review requires an independent, non-deferential re-examination of another tribunal's legal rulings. *Pierce*, 2014 OK 37, ¶7, 327 P.3d 530; *In re A.M.*, 2000 OK 82, ¶6, 13 P.3d 484; *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, n.1, 932 P.2d 1100.

## ANALYSIS

¶4 First, it is clear our Courts recognize a person's claim to a driver's license is a protected property interest entitled to application of due process standards. *Price v.*

---

[1]. DPS argues their evidence indicated a ten month period between the time Ryan received his hearing request acknowledgment and stay, and the actual hearing date.

*Reed*, 1986 OK 43, ¶ 11, 725 P.2d 1254 (citing *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 1589 [29 L.Ed.2d 90 (1971) ]). We also recognize the state interest in depriving drunk drivers of permission to continue operating an automobile is particularly strong. *Pierce*, 18–19.

¶ 5 We do not agree with DPS that this case is really factually distinguishable from *Pierce v. State ex rel Dept. of Public Safety*, 2014 OK 37, 327 P.3d 530. In *Pierce*, the evidence showed intentional postponements of the administrative hearing for some twenty months because DPS's witness was scheduled to be deployed on military duty, even though the witness was available during the first five months and then on an emergency basis for an additional three months before deployment. The hearing was then set approximately one month after his return. The Supreme Court in vacating the opinion of another division of this Court found: "[U]nder these unique facts, we hold that the driver's right to a speedy hearing, guaranteed by the Okla. Const. Art. 2, 6,[2] was violated and order reinstatement of his driving privileges." *Pierce*, 24.

¶ 6 The *Pierce* Court citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Mothershed*, 2011 OK 84, ¶ 64, 264 P.3d 1197, and *Flandermeyer v. Bonner*, 2006 OK 87, 152 P.3d 195, once again recognized that a licensed driver cited in a civil proceeding has a right to a "speedy and certain remedy without delay," and in determining whether or not a licensed driver has suffered a deprivation of that right in a civil proceeding such as this, we consider four factors: 1) the length of the delay; 2) the reason for the delay; 3) the party's assertion of the right, and; 4) the prejudice to the party occasioned by the delay. *Pierce*, 8. There is factual dispute if the delay was almost fourteen months or ten months. Ryan, nevertheless, timely asserted his right to an administrative hearing. At issue is the length of the delay and any prejudice.

■ ¶ 7 Here, we agree with Ryan that the *Pierce* Court focused on the eight month period within which the hearing could have been held and was intentionally delayed. The Court's dicta discussed motive for delay when it said, "[T]he ultimate responsibility for the delay was the Department's deliberate action in postponing the cause. Such a delay weighs heavily against the governmental entity responsible for the same." In Ryan's case, there is no evidence of any reason for the delay and particularly, no evidence of caseload backlog as DPS argues we should consider, all resulting in a deliberate action to postpone the case for some unknown reason for ten to almost fourteen months, a much longer period than criticized in *Pierce*.

¶ 8 We also find there is evidence Ryan did suffer prejudice by this delay. His testimony indicated there was some thirty day period between the time his "paper" license expired and when he received his "plastic" license back so he could drive.[3] He stated he was a delivery driver but the company made the choice to not allow him to drive anymore. He later testified when asked,

Q. How many hours a week would you work?
A. Approximately 40 or 50.... I do maintenance for the—it's a plastic injection business, and I do anywhere (sic) from grounds maintenance to machine maintenance, fork lifts, machines.

When asked how many hours he now works, he said,

A. Now, it's approximately 20.

Ryan again attributed his change in employment terms to the cloud over his driver's license.[4]

---

2. The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice.

3. The record testimony and argument reveals conflicting positions as to when Ryan received his "paper" temporary license good for thirty days and then followed by his receipt of his "hard" plastic license. DPS argues he received his temporary license on April 15, 2014 and then his plastic license on June 3, 2014, which would indicate a possible "limbo" period of approximately fifteen days rather than thirty days Ryan argues.

4. On DPS examination of Ryan, he testified he had received a prior DUI but that his current driving privilege was not affected by that charge.

Q. Now, how does—how does the pending driver's license action, how did that affect—explain to the Court how that affected your work.

....

A. Yes. The employer said it's based on my driver's license. If I don't have a driver's license, then I can't drive a company vehicle, let alone my own.

(Tr. Pg. 61, line 25, pg. 62, lines 1–2)

¶9 Indication of possible prejudice to his defense of the revocation due to delay was also shown in the arresting officer's testimony:

Q. Prior to today's testimony, have you reviewed any our (sic) reports?

A. Yes.

Q. How was your memory about these events prior to reading these reports?

A. I remembered vague details but not everything.

Q. And why is that?

A. Because it's been over a year.

Q. So the passage of time has—has had some effect our (sic) memory?

A. Yes, sir.

(Tr. Pg. 52, lines 12–22)

Further,

Q. Now, during your direct examination, you seemed a little confused on what happened to the Officer's Affidavit that Mr. Ryan signed.

A. Yes.

Q. Do you know what happened to that piece of paper?

A. Not for sure.

Q. And why is that?

A. I—I can't remember.

Q. And why can't you remember?

A. Because it was over a year ago.

(Tr. Pg. 56, lines 10–19)

¶10 We agree delay without motive may be insufficient to demonstrate a deprivation of due process. However, in this case, we find delay did result in due process denial. We find the delay after timely request was not minimal and the evidence does not support a reasonable reason for the delay that did result in prejudice to Ryan.

DPS argued his change of work duties could have been due to that charge.

**ADMINISTRATIVE REVOCATION REVERSED, CASE REMANDED**

BELL, P.J., concurs; JOPLIN, J., dissents.