CURRINGTON v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2022 OK CIV APP 1
Case Number: 119743
Decided: 11/23/2021
Mandate Issued: 01/05/2022
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2022 OK CIV APP 1, __ P.3d __

 

STEPHEN N. CURRINGTON, Plaintiff/Appellee,
v.
STATE OF OKLAHOMA, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE J. ANTHONY MILLER, TRIAL JUDGE

AFFIRMED

Sabah Khalaf, THE KHALAF LAW FIRM, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellee,

Mark E. Bright, DEPARTMENT OF PUBLIC SAFETY, Oklahoma City, Oklahoma, for Defendant/Appellant.

THOMAS E. PRINCE, JUDGE:

¶1 Defendant/Appellant, the Department of Public Safety ("DPS"), appeals an order setting aside and vacating a suspension of a driver's license. DPS suspended the license of Plaintiff/Appellee, Stephen N. Currington, after receiving abstracts from the City of Tulsa for traffic violation convictions. The abstracts received by DPS were inaccurate because Currington had not been convicted of any offense. Currington appealed the suspension to the trial court. DPS corrected the driving record after the appeal had been initiated and then argued that the matter was moot. The trial court determined that DPS violated Currington's right to due process by suspending the license without providing him with notice and an opportunity to be heard. The trial court held that the matter was not moot and set aside the suspension. We find that DPS did not violate Currington's right to due process. However, DPS suspended Currington's license without justification. Therefore, the Journal Entry of Judgment setting aside and vacating the suspension is affirmed.

BACKGROUND

¶2 Currington was notified by DPS that his license would be suspended for one month beginning on March 25, 2021. On March 25, 2021, pursuant to 47 O.S. § 6-211

¶3 Currington contacted his attorney, who attempted to remedy the situation with DPS. Currington's attorney testified at trial and stated that he and his assistant spent approximately four to five hours attempting to resolve the situation. When the first attorney could not get the matter resolved, he recommended that Currington hire another attorney with more experience dealing with DPS.

¶4 The record reflects that Currington's second attorney was hired shortly before March 25, 2021, when the suspension was set to begin. The second attorney personally met with an individual at the municipal courthouse in Tulsa and contacted DPS, but was unable to convince DPS to correct Currington's driving record.

¶5 Testimony at trial revealed that at least two DPS employees were aware that the abstracts were incorrect and/or that Currington did not have any convictions as a result of the tickets issued by the City of Tulsa. Henry F. Stanco was a compliance hearing officer with DPS. Mr. Stanco received a phone call from a judge's clerk and was made aware that the convictions should not have been on Currington's driving record because the matter was still being adjudicated. He asked the clerk to send him a corrected document. The clerk claimed to send an amended abstract to DPS on March 17th, but DPS denied receiving the abstract. Shantel Young also testified. She stated that she was a DPS employee who was contacted by the DPS legal division and made aware of the possibility that the abstracts were incorrect. Ms. Young contacted the municipal court and had a conversation with Melinda Witt. According to Ms. Young, Ms. Witt told her that Currington had convictions for the traffic violations so the driving record should not be altered. Ms. Witt testified at trial and directly contradicted Ms. Young's testimony. She testified that she never told Ms. Young that there were any convictions and that Ms. Young never asked for any documentation from the court to fix Currington's driving record.

¶6 Currington testified at trial and stated that he was concerned about having his license suspended because he is required to drive every day for work. In addition, he was worried about his job because he has a mortgage loan originator license that could be affected if his driver's license is suspended. Currington personally attempted to contact DPS on many occasions by telephone. On March 23rd, two days before the suspension was set to begin, Currington went to a DPS location in an attempt to resolve the situation in person. Currington was unable to meet with anyone in person so he returned the next morning. On March 24th, Currington arrived at the DPS location at 6:00 in the morning and waited several hours to speak with someone about his situation. Currington testified that he presented DPS with a corrected abstract from Wagoner, an abstract from Bixby and documentation from Tulsa indicating that the matters in Tulsa were still pending. Currington testified that, after presenting all of his information to DPS, a supervisor reviewed the information and said that they could not accept any of his documentation. At trial, Currington further testified that:

And I said, okay, well, according to Wagoner and according to Tulsa and according to Bixby, they've sent this information to you. And now I'm providing it. So what do we need to do to resolve it?

And they said, there's nothing you can do.

¶7 On March 25th, after Currington and his attorneys were unable to get the driving record corrected, Currington filed an appeal to the district court. Currington then obtained a copy of his motor vehicle record and, according to the MVR, his license was suspended. Currington left Oklahoma for approximately eleven days under the belief that his license was suspended the entire time. When he returned on April 5th, he obtained another copy of his MVR. At that time his license was no longer under suspension.

¶8 Currington never received anything from DPS stating that the suspension was stayed as a result of his filing an appeal. On April 17th, DPS corrected Currington's driving record. On April 25th, DPS filed a pleading in this matter giving notice that the license had been corrected. At the conclusion of trial, the trial court set aside and vacated the suspension. DPS timely commenced this appeal.

STANDARD OF REVIEW

¶9 In administrative matters involving driver's license privileges, this Court will not reverse the findings of the trial court if "there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support its findings." Smith v. State ex. rel. Dept. of Public Safety, 1984 OK 16680 P.2d 365de novo. Cole v. State ex. rel. Dept of Public Safety, 2020 OK 67473 P.3d 467De novo review involves a plenary, independent and non-deferential re-examination of the trial court's rulings. Id. at 470.

ANALYSIS

¶10 DPS argues on appeal that it should not be held responsible for suspending Currington's license because the City of Tulsa failed to provide DPS with an amended abstract prior to March 25th

¶11 DPS claims that it should not be held responsible for suspending Currington's license since the City of Tulsa did not provide DPS with amended abstracts prior to the commencement of the suspension. The Court addressed a similar argument in Simpson v. State ex. rel. Dept. of Public Safety, 2020 OK CIV APP 34469 P.3d 211Simpson, DPS revoked a driver's license for a period of thirty-six months when it received an abstract stating that the driver committed the crime of possession of marijuana while using a motor vehicle. Id. at 213. Pursuant to 47 O.S. § 6-211Simpson Court reversed. The Simpson Court noted that DPS revoked the driver's license on the basis that the abstract stated that he had a felony conviction for unlawfully possessing a controlled dangerous substance while using a motor vehicle. Id. at 214. However, nothing in the Judgment and Sentence indicated that the driver committed his crime while using a motor vehicle. Id. at 214. The Simpson Court recognized that although it may be prudent for DPS to rely on the description of crimes provided by court clerks in the abstracts, a revocation may be successfully challenged on appeal if DPS is unable to show that the description was supported by the underlying judgment. Id. at 215. As a result, the Simpson Court concluded that the driver's license had been improperly revoked. Id. at 215.

¶12 Here, the City of Tulsa transmitted incorrect abstracts to DPS which caused DPS to send Currington correspondence stating that his license would be suspended. Currington and his two attorneys went through significant efforts to demonstrate to DPS that the abstracts were incorrect. DPS claims that it cannot alter a driving record and that documentation must come directly from the municipal court. However, when DPS was provided with information demonstrating that the abstracts were not supported by municipal court records, it was error for DPS to rely solely on the abstracts and to not obtain an amendment from the municipal court. We find that, under these circumstances, the failure of DPS to either stay or withdraw the suspension was improper. DPS could have avoided this matter if it had considered the information provided to it by Currington and followed up with the Tulsa municipal court.

¶13 The trial court held that Currington was denied due process because DPS suspended his license before he was given notice or an opportunity to be heard. An individual's claim to a driver's license is a protectable property interest that may not be terminated without due process. Hunsucker v. Fallin, 2017 OK 100408 P.3d 599Pierce v. State ex rel. Dept. of Public Safety, 2014 OK 37327 P.3d 53047 O.S. § 6-211

¶14 Williams v. State ex rel. Dept. of Public Safety, 1990 OK CIV APP 27791 P.2d 120Williams Court addressed mandatory post-conviction license revocations under 47 O.S. §§ 6-205Id. at 123. The Williams Court stated that although a license revocation is mandatory and may not be appealed when certain felony convictions occur, there is no procedural due process deprivation since the licensee was afforded a hearing regarding the predicate for the license revocation. Id. at 123. If the licensee is unsuccessful at the hearing and there is a conviction, then any action taken by DPS to revoke the license is nothing more than a ministerial function. Id. at 123. In this matter, Currington was given the ability to dispute the traffic tickets in the municipal court prior to any conviction and, in addition, he was given the ability to appeal the driver's license suspension to the trial court. As a result, we find that Currington's procedural due process rights were not violated when DPS suspended his license without notice or an opportunity to be heard prior to the suspension.

¶15 DPS moved to dismiss Currington's appeal to the trial court based on the mootness doctrine. DPS argues that once it restored Currington's driving privilege, any ruling by the trial court would have no practical effect on any existing controversy. Generally a matter is considered moot when a court does not have the ability to grant effective relief or where any opinion would possess characteristics of a hypothetical or advisory opinion. Baby F. v. Oklahoma County District Court, 2015 OK 24348 P.3d 1080

¶16 In Johnson v. State ex. rel. Dept. of Public Safety, 2018 OK CIV APP 4408 P.3d 634Id. at 636. The Johnson Court noted that the correspondence was not signed and contained no official set-aside order. Id. at 636. Here, DPS argues that since it filed a pleading giving notice that the driving record was corrected, Currington's case was moot. However, there was no official order for Currington to rely on until the trial court issued its decision. We find that the matter was not moot and affirm the decision of the trial court.

CONCLUSION

¶17 The trial court erroneously determined that DPS violated Currington's right to due process by suspending the license without providing him with notice and an opportunity to be heard. Accordingly, we find that DPS did not violate Currington's right to due process. On the other hand, the trial court was correct when it set aside and vacated the suspension. In addition, we find that Currington's appeal was not moot. The Journal Entry of Judgment setting aside and vacating the suspension is, therefore, affirmed.

GOREE, P.J., and MITCHELL, J., concur.